STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark H. TODY, Jr.,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2007AP400–CR. Oral argument December 16, 2008.
—Decided April 30, 2009.*

2009 WI 31

(Also reported in 764 N.W.2d 737.)

690

For the defendant-appellant-petitioner there were briefs by *Byron C. Lichstein,* and the *Frank J. Remington Center, University of Wisconsin Law School,* Madison, and oral argument by *Byron C. Lichstein.*

For the plaintiff-respondent the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Mark H. Tody, Jr., seeks review of an unpublished decision of the court of appeals affirming a judgment and an order of the Circuit Court for Ashland County, Robert E. Eaton, Judge.[1] Judge Eaton presided over the defendant's jury trial and denied the defendant's motion to strike Judge Eaton's mother as a prospective juror. Judge Eaton's mother sat on the jury. The defendant was convicted of taking and driving a vehicle without the owner's consent, as a party to a crime, contrary to Wis. Stat. § 943.23(2) and § 939.05 (2005–06).[2]

---

[1] *State v. Tody,* No. 2007AP400–CR, unpublished slip op. (Wis. Ct. App. Apr. 22, 2008).

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

Wisconsin Stat. § 943.23(2) provides in full that "[e]xcept as provided in [Wis. Stat. § 943.23(3m)], whoever intentionally takes and drives any vehicle without the consent of the owner is guilty of a Class H felony."

Wisconsin Stat. § 939.05(1) provides in full that "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has

¶ 2. The defendant challenges the jury verdict on a single ground, namely that it was error to allow the presiding judge's mother to be a juror.

¶ 3. The defendant presents two legal arguments to support his position that the judge's mother should be struck for cause: (1) he was deprived of his right under the Sixth Amendment to the United States Constitution or Article I, Section 7 of the Wisconsin Constitution to be tried by an impartial jury independent of the judge; and (2) the circuit court judge should have disqualified himself from deciding whether his mother could be a fair, impartial juror, citing Wis. Stat. § 757.19 and due process concerns.[3] These arguments resonate with the court, although not in the precise form presented by the defendant.

¶ 4. The immediate reaction of the members of the court upon hearing the facts of the case was that the presence of the circuit court judge's mother on the jury raises red flags of danger of juror bias and of a circuit court judge having to rule on matters involving a member of his or her family.

¶ 5. For the reasons set forth, we conclude that the defendant was deprived of his right under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution to be

been convicted of some other degree of the crime or of some other crime based on the same act."

[3] Wisconsin's judicial disqualification statute, Wis. Stat. 757.19, provides in relevant part as follows:

(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

 . . . .

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

tried by an impartial jury and accordingly reverse the conviction and order a new trial. A presiding judge's mother serving as a juror is a special circumstance so fraught with the possibility of bias that we must find objective bias regardless of the particular juror's assurances of impartiality.[4]

¶ 6. Justices Prosser, Roggensack, and Ziegler reach the same ultimate conclusion that we do, namely that the circuit court judge erred in permitting his mother to serve on a jury in a case in which the judge presided and that the defendant is entitled to a new trial as a result of this error.[5] They do not, however, identify the authority they rely upon in concluding that the circuit court erred or in concluding that the circuit court's error warrants a new trial for the defendant. Their concurrence explains that it would have been within the circuit court judge's discretion to strike his mother as a prospective juror or to recuse himself from the case.[6] But their concurrence does not explain why

---

[4] The defendant also urges this court to exercise its discretion under Wis. Stat. § 751.06 to order that a new trial be held in the interest of justice or to exercise its superintending and administrative authority under Article VII, Section 3(1) of the Wisconsin Constitution to direct each circuit court judge to prohibit a member of his or her immediate family from sitting as a juror in a case in which the judge presides. We need not, and do not, address these issues.

[5] *See* Justice Ziegler's concurrence, joined by Justices Prosser and Roggensack, ¶ 60 (concurring in the decision to grant a new trial; reasoning that the circuit court judge erred in failing to strike his mother as a prospective juror or to recuse himself from the trial).

[6] *See* Justice Ziegler's concurrence, joined by Justices Prosser and Roggensack, ¶ 60 (stating that because the circuit court has the inherent authority to administer justice, it would

695

the circuit court judge not only was permitted but also was required, on pain of reversal by this court, to exercise his discretion in this manner.

¶ 7. Indeed, Justice Prosser explicitly argues that this court should adopt a results-oriented approach in deciding the present case and should avoid reaching any legal conclusions that might serve as precedent in future cases.[7] Justice Prosser explains that in his view, any precedent that could emerge from this case would be "inappropriate" precedent.

¶ 8. For the reasons set forth, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

## I

¶ 9. The relevant facts are undisputed. The State charged the defendant with taking and driving a vehicle without the owner's consent as a party to a crime. The defendant pled not guilty, and the matter was set for trial.

¶ 10. During the voir dire, it emerged that the circuit court judge's mother was among the pool of prospective jurors. The transcript of the voir dire pro-

---

have been within the circuit court judge's discretion to strike his mother as a prospective juror or to recuse himself from the case). *See also id.,* ¶ 62 ("A circuit court judge possess broad inherent powers that provide him or her with the tools to fairly, efficiency, and effectively administer justice.") (citation omitted).

[7] *See* Justice Prosser's concurrence, ¶ 53 (arguing that we should "reach a result that the court deems necessary without establishing inappropriate precedent"); *id.,* ¶ 57 (arguing against "precedent-setting" opinions).

ceeding reveals the following exchange disclosing the juror's relationship with the presiding circuit court judge:

> [THE COURT]: Is there anyone among you who is a member of any police department, sheriff's department, or other law enforcement agency? Any of you have relatives employed in a law enforcement related capacity? Ms. Eaton, do you have a relative employed in the law enforcement related capacity?
>
> MS. EATON: The judge.
>
> THE COURT: I like — I like to consider myself part of law enforcement or I may be disowned. You are related to me how?
>
> MS. EATON: Your mother.

¶ 11. The prosecutor briefly questioned the judge's mother about whether she thought that her relationship with the judge would interfere with her duties as a juror:

> [Prosecutor]: Mrs. Eaton, I know you're the judge's mother, do you feel comfortable sitting on a trial where he's the judge but he's not party in the case?
>
> MS. EATON: I don't think it makes any difference.
>
> [Prosecutor]: Doesn't make any difference one way or the other to you? You have no opinion about the defendant's guilt or innocence?
>
> MRS. EATON: I know nothing about it.

¶ 12. Defense counsel also questioned the judge's mother:

> [Defense counsel]: Boy, Ms. Eaton, do I have a lot of questions for you. Seriously. Do you feel you could be a

697

fair and impartial juror? Would you have to explain to His Honor Judge Eaton, let's say you voted for a verdict of not guilty, would you feel you would have to explain or justify why you voted that way?

MS. EATON: No.

[Defense counsel]: Would it be fair to say you come in here completely with an independent mind and you're without being influenced by the fact that His Honor Judge Eaton holds a very high office?

MS. EATON: Well, I feel like the jury makes the decision, he isn't part of the decision making. No.

[Defense counsel]: That's right and you'll be part of the jury, if you're retained as a juror you'll be one of twelve of the jury.

MS. EATON: Right.

¶ 13. Defense counsel ultimately moved to have the circuit court judge strike his mother for cause from the pool of prospective jurors. Defense counsel argued that "we have a Ceaser's [sic] wife situation here where even the very fact of the close relationship I think, it's per se a prejudicial matter." Defense counsel was particularly worried that the other jurors might give undue weight to the opinion of the judge's mother due to "her personal relationship with the Court."

¶ 14. Defense counsel seemed concerned that the circuit court judge would misinterpret defense counsel's motion as implying criticism of the judge's mother. Defense counsel asked that the judge's mother be excused for cause from the jury pool "with all due respect" and stated that he "certainly [was] not in any way implying that [the judge's mother] cannot be a fair and impartial juror . . . ." Defense counsel also stated that the situation regarding the judge's mother was a "[v]ery sensitive matter."

698

¶ 15. The prosecutor opposed defense counsel's motion. The prosecutor opined that the judge's mother had "raised an individual who looks at facts and tries to find the truth" and that the judge's mother presumably would do the same as a juror.

¶ 16. The circuit court judge suggested a preference for granting defense counsel's motion. He stated that he was "not necessarily excited about having [his mother] on the panel." The judge also acknowledged that he "[could] see the possibility of questions arising" and particularly worried that he might "be called into a position where I would have to rule on some type of juror misconduct involving my mother[.]"

¶ 17. Nevertheless, the circuit court judge declared that "I'm going to perhaps reluctantly deny" the defendant's motion to strike the judge's mother as a juror for cause. The circuit court judge apparently concluded that he had no choice in the matter. Three times, the circuit court judge stated words to this effect: "I don't think I have any legal basis for excusing her."

¶ 18. Neither the State nor defense counsel used a peremptory challenge to remove the judge's mother from the jury. The judge's mother sat as a juror in the defendant's trial.

¶ 19. In his instructions to the jury, the circuit court judge described the separate roles of the judge and jury and the jury's duty to decide the case based solely on the evidence presented at trial. The circuit court judge instructed the jury in relevant part as follows:

> It is your duty to follow all of these instructions. Regardless of any opinion you may have about what the law is or ought to be, you must base your verdict on the law I give you in these instructions. Apply that law to

the facts in the case which have been properly proven by the evidence. Consider only the evidence received during this trial and the law as given to you by these instructions and from these alone, guided by your soundest reason and best judgment, reach your verdict. If any member of the jury has an impression of my opinion as to whether the defendant is guilty or not guilty, disregard that impression entirely and decide the issues of fact solely as you view the evidence. You, the jury, are the sole judges of the facts, and the court is the judge of the law only.

¶ 20. The defendant's trial lasted one day. The jury found the defendant guilty of the crime charged. The circuit court withheld sentence and placed the defendant on probation for three years.

## II

¶ 21. When the circuit court denies an accused's motion to excuse a juror for cause on the ground of bias, the accused often will have the opportunity to exercise a peremptory challenge to remove the juror. In the present case the defendant did not exercise a peremptory challenge to strike the circuit judge's mother as a juror. A defendant's failure to exercise a peremptory challenge does not result in a waiver of the defendant's right to raise on appeal the issue whether the juror's inclusion violated the defendant's constitutional right to be tried by an impartial jury.[8]

¶ 22. A criminal defendant's right to a fair trial by a panel of impartial jurors is guaranteed by the Sixth

[8] *State v. Lindell,* 2001 WI 108, ¶ 117, 245 Wis. 2d 689, 629 N.W.2d 223 (citing *State v. Gesch,* 167 Wis. 2d 660, 671, 482 N.W.2d 99 (1992)).

Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[9]

¶ 23. The Sixth Amendment provides in full as follows:

> In all criminal prosecutions, *the accused shall enjoy the right to a* speedy and public *trial, by an impartial jury* of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. (Emphasis added.)

¶ 24. The Sixth Amendment right to a jury trial is applicable to the States through the Due Process Clause of the Fourteenth Amendment.[10]

¶ 25. Article I, Section 7 of the Wisconsin Constitution, this state's analogue to the Sixth Amendment, provides in full as follows:

> *In all criminal prosecutions the accused shall enjoy the right* to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, *to a* speedy public *trial by an impartial jury* of the county or

---

[9] *State v. Faucher,* 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999).

[10] *See Duncan v. Louisiana,* 391 U.S. 145, 149 (1968) ("[W]e hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." (footnote omitted)).

district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law. (Emphasis added.)

¶ 26. This court recognizes three categories of bias that may render a person's presence on the jury inconsistent with the guarantee of fair trial by a panel of impartial jurors: "statutory bias," "subjective bias," and "objective bias."[11]

¶ 27. "Statutory bias" and "subjective bias" are not at issue in the present case and need not be discussed.[12] The defendant contends that the circuit court judge's mother was objectively biased.

■

¶ 28. This court ordinarily "give[s] weight to a circuit court's conclusion that a prospective juror is or is not objectively biased" and will reverse the circuit court's determination "only if as a matter of law a reasonable judge could not have reached such a conclusion."[13]

■

¶ 29. We generally defer to the circuit court's determination because "a circuit court's conclusion on objective bias is intertwined with factual findings supporting that conclusion."[14] Here, for two reasons, we depart from our usual practice of deferring to the circuit court's determination of objective bias.

---

[11] *Faucher,* 227 Wis. 2d at 706.

[12] "Statutory bias" simply refers to categories of per se bias set forth at Wis. Stat. § 805.08(1). *See Faucher,* 227 Wis. 2d at 717. "[S]ubjective bias refers to the bias that is revealed by the prospective juror on voir dire: it refers to the prospective juror's state of mind." *Id.*

[13] *Faucher,* 227 Wis. 2d at 721.

[14] *Id.* at 720.

¶ 30. First, appellate deference appears almost ludicrous when the appellate court is going to rely upon the circuit court judge's determination that a member of his or her immediate family is objectively impartial. The appearance of fairness and propriety clearly is lost when the critical determination whether a prospective juror should be excluded as a juror on the ground of bias is entrusted to a circuit court judge who is a member of the juror's immediate family and is not subject to independent appellate review.

¶ 31. Second, the circuit court judge in the present case erred as a matter of law in stating that he lacked any legal basis to grant the defendant's motion. The circuit court judge commented on his lack of authority as follows: "So, again, I'm not necessarily excited about having her on the panel because I can see the possibilities of questions arising like you [the defense counsel] raised but I don't have any basis for kicking her off so at this point your motion is denied."

¶ 32. The circuit court judge erroneously concluded that although there were practical reasons for striking his mother from the jury, he had no legal basis for doing so. The correct principle of law that should have guided the circuit court judge is that a circuit court judge should err on the side of dismissing a challenged juror when the challenged juror's presence may create bias or an appearance of bias.[15] The reason for this principle of law is that a circuit court's striking

---

[15] *See Lindell,* 245 Wis. 2d 689, ¶ 49 ("[W]e caution and encourage the circuit courts to strike prospective jurors for cause when the circuit courts 'reasonably suspect' that juror bias exists." (quoting *State v. Ferron,* 219 Wis. 2d 481, 495–96, 579 N.W.2d 654 (1998) (internal quotation marks omitted)));

a prospective juror who raises issues of bias saves judicial time and resources in the long run.[16]

¶ 33. This court has acknowledged that cases concerning juror bias present difficult legal questions for this court and the court of appeals.[17] The circuit court's best course of action is to obviate the need for appellate review of these questions by erring on the side of caution in the first instance by striking the juror.

¶ 34. The circuit court judge in the present case failed to acknowledge or to exercise his authority to strike a prospective juror for cause when the circuit court reasonably suspected that juror bias or an appearance of juror bias existed. Although the circuit court judge seemed to express a preference for granting the defendant's motion, he repeatedly and erroneously stated that he lacked any legal basis for granting the defendant's motion. The circuit court judge did have a legal basis.

¶ 35. Accordingly, in the present case we review the circuit court judge's determination of juror bias independently of the circuit court and the court of appeals, although benefiting from their analyses.

---

*Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956) (holding that a circuit court judge should strike a juror for cause "whenever he may reasonably suspect that circumstances outside the evidence may create bias or an appearance of bias on the part of the challenged juror").

[16] *Lindell*, 245 Wis. 2d 689, ¶ 49 (stating that by "err[ing] on the side of striking prospective jurors who appear to be biased," the circuit courts may "avoid the appearance of. bias, and may save judicial time and resources in the long run" (quoting *State v. Ferron*, 219 Wis. 2d 481, 503, 579 N.W.2d 654 (1998) (internal quotation marks omitted))).

[17] *Lindell*, 245 Wis. 2d 689, ¶ 31.

¶ 36. A juror is objectively biased when a reasonable person in the juror's position could not be impartial.[18] "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial."[19] A juror therefore should be viewed as objectively biased if a reasonable person in the juror's position could not avoid basing his or her verdict upon considerations extraneous to evidence put before the jury at trial.

¶ 37. Ordinarily it is a juror's "relationship to either side [of a dispute] which leaves doubt about [the juror's] impartiality."[20] Wisconsin Stat. § 805.08(1), for example, states that a juror must be excused if "the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case . . . ."[21] The judge's mother does not fit into the traditional mold of a juror who has a relationship with a party or someone involved with a party.

¶ 38. Nevertheless, we conclude that the circuit court judge's mother was objectively biased under the

---

[18] *Faucher,* 227 Wis. 2d at 718.

"[T]he focus of the inquiry into 'objective bias' is not upon the individual prospective juror's state of mind . . . ." *Faucher,* 227 Wis. 2d at 718. A juror's subjective state of mind, however, is relevant to the determination of objective bias. *Id.* at 720.

[19] *Faucher,* 227 Wis. 2d at 715 (citing *Irvin v. Dowd,* 366 U.S. 717, 722 (1961)).

[20] *Lindell,* 245 Wis. 2d 689, ¶ 49 (quotation marks and citation omitted).

[21] *See also Gesch,* 167 Wis. 2d at 662 (holding that "prospective jurors who are related to a state witness by blood or marriage to the third degree . . . must be struck from the jury panel").

standards set forth in our case law. The judge's mother has an interest in the case, namely her familial relationship with the judge, that is extraneous to the evidence on which the jury is to base its decision. A reasonable person in the position of the judge's mother would not have been able to set aside her relationship to the presiding judge when discharging her duties as a juror.[22]

¶ 39. Furthermore, the mother's presence may have a potential impact on the trial proceedings or the jury's deliberations. Counsel may be reluctant to challenge the circuit court's adverse rulings with ordinary zeal if one of the jurors whom counsel needs to persuade happens to be an immediate family member of the presiding judge. The other jurors may tend to give the deference to the judge's mother that they are presumed to give to the judge.[23]

¶ 40. Finally, a close and familial link between the judge and a juror is not congruent with one of the basic

---

[22] In arguing that the judge's mother was objectively biased in the State's favor, the defendant also points out that the judge's mother identified her son, a neutral party, as a member of law enforcement and further that the judge responded by suggesting that he "may be disowned"—presumably by his mother—if he did not consider himself a member of law enforcement as well. We do not find this argument persuasive.

Neither the judge nor the judge's mother made comments demonstrating more than a generalized admiration for law enforcement. Neither person disparaged criminal defendants or criminal defense attorneys. Indeed, when defense counsel asked the prospective jurors whether they disagreed with his view that an acquittal can be "just as much law enforcement . . . as a conviction," the judge's mother kept silent with the rest of the jurors in the pool.

[23] See Quercia v. United States, 289 U.S. 466, 470 (1933) ("The influence of the trial judge on the jury is necessarily and

706

purposes underlying the constitutional guarantee of trial by an impartial jury. The United States Supreme Court has recognized that the federal constitution, as well as the constitutions of the many states, provides for trial by jury in criminal cases in large part to protect against the abuses of judges.[24] The presence of a member of the judge's immediate family on the jury seems conspicuously inconsistent with the jury's function as, in part, a check upon the power of the judge.

¶ 41. In these circumstances, a circuit court need not search for evidence of bias to protect a defendant's right to a fair trial.[25] A presiding judge's mother as a juror is a special circumstance so fraught with the possibility of bias that objective bias must be found regardless of the particular juror's assurances of impartiality.[26]

¶ 42. We conclude that as a matter of law a reasonable judge could not reach any other conclusion under the circumstances of the present case than to excuse his mother from sitting on the jury.

¶ 43. The parties have given scant attention to the question whether the "harmless error" doctrine

properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." (quotation marks and citation omitted)).

[24] *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968) ("Those who wrote our constitutions knew from history and experience that it was necessary to protect against . . . judges too responsive to the voice of higher authority. . . . [T]he right to be tried by a jury of his peers [gives the accused] an inestimable safeguard against . . . the compliant, biased, or eccentric judge.").

[25] *Faucher*, 227 Wis. 2d at 723.

[26] *Id.* at 724.

applies to the circuit court judge's erroneous inclusion of his mother on the jury, in violation of the defendant's right to a fair trial by an impartial jury under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. The defendant briefly states that "harmless error does not apply to impartial jury issues."[27] Although the State devotes several pages to describing the evidence against the defendant and appears to view this evidence as overwhelming,[28] the State sets forth no position regarding the harmless error doctrine.

¶ 44. When concluding in our previous cases that a juror was biased and was erroneously impaneled, the court has reversed the defendant's conviction and ordered a new trial without inquiry into harmless error.[29] These cases reflect the rule that juror bias taints the entire proceeding and requires automatic reversal. Juror bias is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. Juror bias seriously affects the fairness, integrity, or public reputation of judicial proceedings and is per se prejudicial.

¶ 45. Although there is a dearth of authority regarding the question whether a member of the presiding judge's immediate family may serve as a juror, our decision in the present case is consistent with and is

[27] Reply Brief of Defendant-Appellant-Petitioner Mark H. Tody, Jr. at 1.

[28] *See* Brief of Plaintiff-Respondent State of Wisconsin at 12–17.

[29] *See, e.g., State v. Faucher,* 227 Wis. 2d 700, 596 N.W.2d 770 (1999); *State v. Delgado,* 223 Wis. 2d 270, 588 N.W.2d 1 (1999); *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992).

supported by two cases from other jurisdictions: *Elmore v. State,* 144 S.W.3d 278 (Ark. 2004); and *People v. Hartson,* 553 N.Y.S.2d 537 (N.Y. App. 1990). The presiding judge's wife sat as a juror in each of these cases.[30] The Arkansas Supreme Court (in *Elmore*) and the New York appellate court (in *Hartson*) each held that allowing the judge's wife to serve as a juror was error and reversed the defendant's conviction.

¶ 46. Although the courts in *Elmore* and *Hartson* did not clearly identify the constitutional or statutory basis of their decisions, each court employed reasoning substantially similar to ours in the present case. The Arkansas Supreme Court stressed the necessity of avoiding "even the appearance of impropriety, bias, or prejudice" when selecting jurors consistent with the defendant's Sixth Amendment right to a fair trial before an impartial jury.[31] The New York appellate court stated that "a defendant has a fundamental right to an impartial jury" and that "where the impartiality of a juror is open to serious question, disqualification is the better practice."[32]

¶ 47. As we do here, the *Elmore* and *Hartson* courts both ordered new trials without inquiring into questions of prejudice or harmless error. The *Hartson* court explained that "the right to the fact and appearance of a fair jury is so fundamental that the service of the spouse of the Trial Judge as a trial juror requires reversal of [the] defendant's conviction" and additionally that proof of any prejudice to the defendant "is

---

[30] *See Elmore v. State,* 144 S.W.3d 278, 279 (Ark. 2004); *People v. Hartson,* 553 N.Y.S.2d 537, 538 (N.Y. App. 1990).

[31] *Elmore,* 144 S.W.3d at 280.

[32] *Hartson,* 553 N.Y.S.2d at 538.

likely to be out of [the] defendant's reach."[33] The *Elmore* court ordered a new trial with minimal explanation.[34]

¶ 48. The obligation to avoid a biased juror lies not only with defense counsel and the circuit court, but also, as we have stated, with the prosecutor. We repeat the admonitions we gave to prosecutors in *State v. Lindell*, 2001 WI 108, ¶ 118, 245 Wis. 2d 689, 629 N.W.2d 223: Prosecutors have an interest in seeing that biased jurors do not sit. The State should be alert and sensitive to a defendant's challenge for cause. We have urged the State to anticipate a defendant's possible strategy in unsuccessfully challenging a juror for cause and have outlined three courses of action for the State in this eventuality: the State can join the defendant in asking the circuit court to remove the juror for cause; the State can exercise a peremptory strike to remove a juror who has been challenged for cause; or the State can do nothing and risk a new trial if an appellate court concludes that a biased juror was on the jury.[35] The State took the third course of action in the instant case. As a result a new trial is ordered.

¶ 49. For the reasons set forth, we conclude that the defendant was deprived of his right under the Sixth Amendment to the United States Constitution or Article I, Section 7 of the Wisconsin Constitution to be tried by an impartial jury independent of the judge. Accordingly, we reverse the judgment of conviction and remand the cause for a new trial.

---

[33] *Id.*

[34] *See Elmore*, 144 S.W.3d at 280.

[35] *Lindell*, 245 Wis. 2d 689, ¶ 118.

\* \* \* \*

¶ 50. For the reasons set forth we conclude that the defendant was deprived of his right under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution to be tried by an impartial jury and accordingly reverse the conviction and order a new trial. A presiding judge's mother serving as a juror is a special circumstance so fraught with the possibility of bias that we must find objective bias regardless of the particular juror's assurances of impartiality.[36]

¶ 51. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 52. MICHAEL J. GABLEMAN, J., did not participate.

¶ 53. DAVID T. PROSSER, J. (*concurring*). This case presents the jurisprudential question of how to reach a result that the court deems necessary without establishing inappropriate precedent. I join the concurring opinion of Justice Annette Kingsland Ziegler because her opinion understands the problem and attempts to resolve it as narrowly as possible.

¶ 54. The lead opinion takes a different approach. It recognizes the circuit court's error in underestimating and misstating its authority to address the situation at hand. Lead op., ¶¶ 29–32. It lays out sound policy reasons why the circuit court should have exercised its authority in this case. *Id.*, ¶¶ 4, 39–40. But then it

---

[36] *See Faucher,* 227 Wis. 2d at 724.

concludes that the presence of the judge's mother on the jury panel violated the defendant's right to an impartial jury under both the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution, *id.,* ¶¶ 5, 49, and it implies that the judge created structural error by failing to remove his mother from the jury panel, *id.,* ¶¶ 41–47.

¶ 55. I cannot join an opinion that seeks to transform a questionable example of "objective bias" into a per se violation of the Sixth Amendment.

¶ 56. The presence of the judge's mother on the jury after the defendant asked the judge to remove her was not appropriate. The judge had the power to address the situation and avoid any problems in fact or appearance. In my view, he erred in not exercising that power.

¶ 57. For this court, there has to be a reasonable middle ground between a precedent-setting opinion that would approve, over the objection of the defendant, a judge's family member sitting on a criminal jury in a trial in which the judge presides, and a precedent-setting opinion that would categorize every future case of objective bias a constitutional violation requiring a new trial. Justice Ziegler's concurrence represents that middle ground.

¶ 58. For the reasons stated, I respectfully concur.

¶ 59. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I write separately because this is not a case that involves juror bias. Standing apart, neither the judge nor the juror was biased. However, the combination of having the judge preside over a case in which he may be called upon to rule on a matter involving his mother as a juror is a problem waiting to happen. The

judge here was first confronted with this issue when he was called upon to decide whether his mother should be stricken for cause.

¶ 60. Judges face tough calls in the courtroom each day. Judges are charged with administering justice and have a concurrent goal of avoiding unnecessary appellate issues. To avoid these appellate issues the judge could have either removed himself from the case or replaced the juror. However, the circuit court judge stated that he did not think there was "any legal basis for excusing" his mother from the panel. I disagree because the circuit court judge has broad inherent authority and thus the discretion and authority to administer justice. Under his inherent authority, the judge should have either stricken his mother from the jury or recused himself from the case. The juror, however, could sit on another case so long as her son was not the presiding judge. Consequently, it is unnecessary for this court to manipulate this case to fit the law of objective bias. Because I do not agree that this case involves juror bias, I respectfully concur in the lead opinion's decision to grant a new trial.

I

¶ 61. I disagree with the lead opinion's determination that this juror was objectively biased. The lead opinion weaves an analysis in order to obtain a result. I do not join in that confusion of case law involving juror bias. Instead, I would call upon judges to use their sound discretion and inherent authority to avoid such situations where the recipe for disaster is right before their eyes. The judge could not rule on a motion which directly involved his mother as a juror. He did, however, rule on a motion that concerned striking her as a juror. If this were a matter where his mother was a witness,

713

he would not preside over that hearing. *See* SCR 60.04(4)(e)4. Judges have broad discretion and employ a wide variety of methods when selecting a jury. Instead of calling upon judges to do what they do every day in running efficient and fair courtrooms and employing procedures to effectively select juries, the lead opinion instead attempts to label this as a case of objective bias. In so doing, the lead opinion unravels the concept of objective bias.

¶ 62. A circuit court judge possesses broad inherent powers that provide him or her with the tools to fairly, efficiently, and effectively administer justice. *See City of Sun Prairie v. Davis,* 226 Wis. 2d 738, 749–50, 595 N.W.2d 635 (1999) (citing to a number of cases and stating "the court exercises inherent authority i[n] ensuring that the court functions efficiently and effectively to provide the fair administration of justice"); *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703 (1982) (discussing inherent powers, which are " 'those powers which must necessarily be used by the various departments of government in order that they may efficiently perform the functions imposed upon them by the people' ").

¶ 63. "This court has been very clear about the circuit court's role in jury selection." *State v. Lindell,* 2001 WI 108, ¶ 109, 245 Wis. 2d 689, 629 N.W.2d 223. "The appearance of bias should be avoided." *Id.* (citations omitted). "Circuit courts are advised to err on the side of striking jurors who appear to be biased" because " '[s]uch action will avoid the appearance of bias, and may save judicial time and resources in the long run.' " *Id.* (citations omitted). Even if the judge did not think his mother appeared to be biased, our directives are not so inflexible as to prevent a judge from eliminating the obvious problems that could occur in having his mother

714

sit on the jury. This judge could have been called to rule upon an issue involving the jury wherein his mother could have been a witness or the subject of inquiry. *See* SCR 60.04(4)(e)4. The judge recognized that he could not sit on such matters, but he believed he lacked authority to remove his mother from the panel.

¶ 64. In *Lindell,* "[w]e recognize[d] that circuit judges must deal with a diverse group of prospective jurors, some of whom are eager to serve even when they should not, others of whom will offer any excuse to escape from their civic duty." *Id.,* ¶ 98. We should acknowledge that a circuit court judge has the discretion to employ any number of tools to address the unexpected situations that may arise during selection of a jury and subsequent trial. A judge should make every attempt to avoid foreseeable problems.

¶ 65. Instead of recognizing that a judge possesses the authority to avoid appellate issues, the lead opinion attempts to fit this into the body of case law that involves objective bias of a juror.

¶ 66. However, the combination of these two people and the concern it produces does not square with objective juror bias as the lead opinion would have us believe. There is no reason to believe that a reasonable person in the juror's position was partial and unable to base her decision on the evidence presented and the law as instructed. It is counterproductive to pigeonhole this case into the category of objective bias, and it certainly makes no sense that we forever alter and further confuse the law of objective bias. This juror exhibited no bias or prejudice so as to disqualify her on the basis of bias. In point of fact, the objective bias cases relied on by the lead opinion involve situations that directly impact a juror's ability to be fair and impartial. For example, in the cases cited by the lead opinion, the

prospective juror's brother was to testify for the State in *State v. Gesch,* 167 Wis. 2d 660, 667–68, 482 N.W.2d 99 (1992); the prospective juror had a "close personal relationship with the victim" in *Lindell,* 245 Wis. 2d 689, ¶ 42; and the prospective juror was a neighbor to one of the State's witnesses in *State v. Faucher,* 227 Wis. 2d 700, 732–33, 596 N.W.2d 770 (1999). However, none of those concerns are present here. No objective bias exists here.

## II

¶ 67. I concur because I believe the judge should have either stricken his mother from the jury or re-cused himself from the case. I recognize that recusal may be time-consuming and inefficient, and as a result striking the juror was more likely the practical result. Nonetheless, I would continue to call upon judges to do what they do every day when administering justice in courtrooms around this state. Here, selecting a jury that was fair and also appeared fair was critical. I would recognize that the front-line judges have the ability to use their discretion to dispense with a juror since allowing the juror to remain on the case would quite obviously create these types of issues. Within their inherent authority, I would merely call upon our judges to select a fair and impartial jury and avoid such foreseeable appellate issues.

¶ 68. For the foregoing reasons I respectfully concur.

¶ 69. I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this concurrence.