COURT OF APPEALS
DECISION
DATED AND FILED

August 31, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP247-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF1271**

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PATRICK D. FOWLER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Patrick D. Fowler appeals from a judgment, entered on a jury's verdicts, convicting him of two counts of first-degree intentional homicide. He also appeals from an order denying his motion for postconviction relief. On appeal, Fowler raises several issues. We reject his arguments and affirm the judgment and order.

## BACKGROUND

¶2 In 2016, Fowler repeatedly stabbed his girlfriend and her four-year-old daughter, killing them both. Before leaving, Fowler set his girlfriend's home on fire. He purchased a Greyhound bus ticket to Texas, but was intercepted by law enforcement in Arkansas, where he was arrested and interviewed. In the interview, Fowler admitted to killing both victims and setting the fire. He was charged with two counts of first-degree intentional homicide.

¶3 In February 2017, Fowler sent a *pro se* letter to the trial court, requesting a new attorney. The trial court held a hearing and asked Fowler why he wanted new counsel. Fowler's main complaint was that he had inadequate face time with counsel. The trial court encouraged Fowler and counsel to work together and deferred ruling on the request until the next hearing date. At the next hearing date, the trial court again engaged Fowler in a discussion about his request. Ultimately, the trial court denied the request, concluding that the attorney-client relationship was not broken and there was an insufficient basis for counsel to withdraw.

¶4 The case was subsequently tried to a jury in April 2017. During voir dire, the State told jurors that "there might be things that you see and hear" that would be disturbing and asked whether there was anyone "who just doesn't have the stomach to handle things that are physically disturbing to see and hear?" Juror

19 raised her hand. The State asked, "You're just squeamish?" to which Juror 19 replied, "Yes, extremely." Later, Fowler moved to have Juror 19 struck for cause. The trial court denied the motion, although Fowler removed the juror with one of his peremptory challenges. The jury convicted Fowler. The trial court sentenced him to consecutive terms of life imprisonment without eligibility for release to extended supervision.

¶5    In January 2020, Fowler filed a postconviction motion in which he alleged that the information obtained from Greyhound, which allowed them to intercept him in Arkansas, should have been suppressed. Fowler further argued that trial counsel was ineffective for failing to challenge another potential juror, Juror 5, for cause; that juror had indicated, in response to defense counsel's voir dire questioning, that the child victim's age bothered him. The circuit court denied the motion.[1] Fowler appeals. Additional facts will be discussed herein.

## DISCUSSION

### I. Suppression

¶6    After detectives identified Fowler as a suspect, they interviewed his mother. She told them that she had taken him to the Greyhound bus station to buy a ticket to Texas, where his brother lived. Detectives requested ticket records and video from Greyhound, which the company provided, although the request was neither made nor fulfilled pursuant to a warrant. From the Greyhound records, detectives learned Fowler's travel itinerary and stopped him in Arkansas.

---

[1] The Honorable Mark A. Sanders presided through sentencing and will be referred to as the trial court. The Honorable Stephanie Rothstein denied the postconviction motion and will be referred to as the circuit court.

¶7 Relying on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), Fowler's postconviction motion alleged that he had a "reasonable expectation of privacy with respect to his location, travel, and movements" such that, under *Carpenter*, a warrant was retroactively required for the release of the Greyhound records.[2] Because Fowler believed his travel itinerary was unlawfully obtained, he argued that all derivative evidence, including his confession, must be suppressed, entitling him to a new trial. The circuit court rejected Fowler's analysis, as do we.

¶8 In *Carpenter*, the government was investigating a multi-state robbery spree when it applied for and received court authorization to obtain cell phone records of petitioner Timothy Carpenter. *Id.* at 2212. The records provided 12,898 location data points for Carpenter, and Carpenter was charged with twelve offenses. *Id.* Carpenter moved to suppress the cellular data. *Id.* The district court denied the motion, and the Sixth Circuit Court of Appeals affirmed, holding that Carpenter "lacked a reasonable expectation of privacy in the location information … because he had shared that information with his [third-party] wireless carriers." *Id.* at 2212-13. Thus, the cellular data constituted business records, which are not entitled to Fourth Amendment protection. *Id.*

---

[2] Typically, a defense or objection based on use of allegedly illegal means to secure evidence must be raised before trial or it will be forfeited. *See* WIS. STAT. § 971.31(2) (2019-20); *State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612. However, forfeiture is a rule of judicial administration, and whether to apply the rule is a matter of discretion. *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. Here, Fowler's postconviction motion was based on case law released after his trial and, on appeal, the State does not ask us to apply forfeiture to this claim. We therefore address the issue on its merits.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶9 In its analysis, the Supreme Court commented that *Carpenter* sat at the intersection of two lines of cases: one line that "addresses a person's expectation of privacy in his physical location and movements" and one line that draws a line "between what a person keeps to himself and what he shares with others." *Id.* at 2214-16. The first line of cases is what led to a warrant requirement for certain GPS monitoring. *See id.* at 2215. The second line of cases recognizes that "'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties' … 'even if the information is revealed on the assumption that it will be used only for a limited purpose.'" *Id.* at 2216 (citations omitted).

¶10 The Supreme Court then discussed the uniqueness of the type of information at issue in *Carpenter*, known as "cell-site location information" (CSLI), which "provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Id.* at 2217 (citation omitted). The Court ultimately concluded that, considering the unique nature of cell-site location information, "the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection.… [A]n individual maintains a legitimate expectation of privacy in the record of his physical movements *as captured through CSLI*." *Id.* (emphasis added).

¶11 In his appellate brief, Fowler asserts that the *Carpenter* Court "found that an individual maintains a legitimate expectation of privacy in the record of his physical movements." He further contends that his situation mirrors Carpenter's in that he paid for a bus ticket like one pays for cell phone service, and there was no indication he assumed a risk that Greyhound "would disclose these confidential

records to the police."[3] He asserts that the bus records "are essentially analogous to the cell phone location records" discussed in *Carpenter*.

¶12 Fowler's movements were not captured through CSLI and, thus, we reject his attempt to apply *Carpenter* to this case. The Supreme Court expressly stated that the *Carpenter* decision was "a narrow one" that did not "address other business records that might incidentally reveal location information." *Id.* at 2220; *see also* *United States v. Trader*, 981 F.3d 961, 967-68 (11th Cir. 2020) (*Carpenter*'s narrow exception "applies only to some cell-site location information, not to ordinary business records[.]").

¶13 A better parallel to Fowler's bus ticket is an airplane ticket, not cell phone records. However, federal courts have held there is no reasonable expectation of privacy in airline records. *See United States v. Brooks*, 841 F. App'x 346, 350 (3rd Cir. 2020), *cert. denied*, No. 20-7730, 2021 WL 1952005 (U.S. May 17, 2021); *see also United States v. Goree*, 47 F. App'x 706, 712 (6th Cir. 2002) ("All of the information that Goree objects to was provided by him to the airline. Therefore, Goree lacks any 'reasonable expectation of privacy' in his flight information.").

¶14 We thus conclude that Fowler had no reasonable expectation of privacy in his bus itinerary, detectives did not need a warrant to request the information, and Fowler is not entitled to a new trial based on the itinerary's warrantless disclosure. The circuit court properly denied relief on this claim.

---

[3] Fowler cites no authority for the proposition that travel itineraries with commercial carriers are confidential.

## II. Juror Challenges

¶15    Fowler attempted to challenge Juror 19 for cause after she indicated she was squeamish, although the trial court denied the challenge. On appeal, Fowler argues that the trial court erred in denying the challenge and that trial counsel should have also challenged Juror 5 for cause. Because neither juror was removed for cause, Fowler removed them with peremptory strikes. Relying on *State v. Lindell*, 2001 WI 108, ¶115, 245 Wis. 2d 689, 629 N.W.2d 223, Fowler argues that his "use of multiple peremptory strikes to strike jurors who should have been arguably struck for cause" requires reversal.

¶16    "The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury." *State v. Nielsen*, 2001 WI App 192, ¶24, 247 Wis. 2d 466, 634 N.W.2d 325. "A juror who has expressed or formed any opinion, or is aware of any bias or prejudice in the case, should be removed from the panel." *Id.*; *see also* WIS. STAT. § 805.08(1).[4]

¶17    "Prospective jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias." *State v. Smith*, 2006 WI 74, ¶19, 291 Wis. 2d 569, 716 N.W.2d 482 (citation omitted). There are three types of potential juror bias: statutory, subjective, and objective. *See State v. Faucher*, 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999). Although statutory bias is clearly not a concern in this case, Fowler does not identify whether subjective or objective bias is at issue here.

---

[4] The trial court is to "examine on oath each person who is called as a juror to discover whether the juror … has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused." WIS. STAT. § 805.08(1).

¶18    Subjective bias "refers to the bias that is revealed by the prospective juror on voir dire:  it refers to the prospective juror's state of mind." *Smith*, 291 Wis. 2d 569, ¶20 (citation omitted).  Subjective bias may be revealed by a juror who has "expressed or formed any opinion, or is aware of any bias or prejudice in the case[.]" *See id.* (citation omitted).

¶19    "A juror is objectively biased when a reasonable person in the juror's position could not be impartial." *State v. Tody*, 2009 WI 31, ¶36, 316 Wis. 2d 689, 764 N.W.2d 737, *abrogated in part as stated in* ***State v. Sellhausen***, 2012 WI 5, ¶73, 338 Wis. 2d 286, 809 N.W.2d 14 (Ziegler, J., concurring).  To exclude a juror because of objective bias, there must be either:  "(1) some direct or personal connection between the challenged juror and some important aspect of the particular case, or (2) a firmly held negative predisposition by the juror regarding the justice system that precludes the juror from fairly and impartially deciding the case." *State v. Jimmie R.R.*, 2000 WI App 5, ¶19, 232 Wis. 2d 138, 606 N.W.2d 196.  That is, a juror "should be viewed as objectively biased if a reasonable person in the juror's position could not avoid basing his or her verdict upon considerations extraneous to evidence put before the jury at trial." *Tody*, 316 Wis. 2d 689, ¶36.

¶20    Our standard of review varies slightly depending on the type of bias in question.  The trial court "sits in the best position to judge" subjective bias, so we will uphold that court's determination regarding whether a prospective juror is or is not subjectively biased unless that determination is clearly erroneous. *See Lindell*, 245 Wis. 2d 689, ¶36.  "Whether a juror is objectively biased is a mixed question of fact and law." *Id.*, ¶39.  We uphold the trial court's factual findings unless clearly erroneous, but whether those facts fulfill the legal standard of objective bias is a question of law. *Id.*  While we do not typically defer to the trial

court on a question of law, its conclusion on objective bias is so intertwined with its factual conclusions that it is appropriate for us to give weight to the trial court's decision. *Id.*

### a. Juror 19

¶21  During voir dire, the following exchange was had between the State and Juror 19:

> [STATE]: … [I]s there anybody who … just doesn't have the stomach to handle things that are physically disturbing to see and hear?  Okay.  We have a hand here.  [Juror 19] is it?
>
> ….
>
> A JUROR:  Mm-hmm.
>
> [STATE]:  What?  You're just squeamish?
>
> A JUROR:  Yes, extremely.
>
> [STATE]:  All right.  And if … we saw a picture or heard a description that was very unpleasant, you think you might react physically?
>
> A JUROR:  Probably not physically but—Actually, yeah, emotionally I could—
>
> [STATE]:  Okay.  Do you think that would … cause you to be—lose your ability to be fair?
>
> A JUROR:  I don't believe so, but I'm not sure.

¶22  Fowler moved to strike Juror 19 for cause, noting she "seemed to express some concern about being presented with evidence that might be I will use the term horrific to the extent that she may suggest that she just might turn away[.]"  The State disagreed, as did the trial court, which noted that the juror "believed … that [her] squeamishness, while it might make her uncomfortable, she did not believe that it would compromise her ability to be fair."  The trial court

9

denied the motion to strike Juror 19 for cause, although Fowler later used a peremptory challenge to exclude her from the panel.

¶23    On appeal, Fowler asserts that the trial court "abused its discretion[5] in denying defendant's challenge for cause of Juror 19. This juror had not unequivocally indicated that she could be fair." He argues that Juror 19 "clearly indicated that she had material problems with being able to act as a juror…. [S]he had indicated that she would not react physically, but she did not indicate her emotional reaction[.]" Fowler observes that Juror 19 "was not just squeamish, but extremely squeamish…. This emotional reaction had risen, by her own words, to a level unable to act as a fair juror."

¶24    Fowler does not indicate whether he considers Juror 19 to have held an objective bias or a subjective bias.[6] However, subjective bias considers the words and demeanor of a prospective juror, *see* **Smith**, 291 Wis. 2d 569, ¶20, which is precisely what Fowler challenges about Juror 19. Fowler's specific complaint is that while the trial court had indicated that Juror 19 stated that she believed that her squeamishness would not compromise her ability to be fair, her actual response was that she was not sure, "which is much different than stating that she did not believe that it would…. Such a response clearly indicates a highly equivocal ability to be fair. Under the relevant and applicable case law, she had not appeared unbiased."

---

[5] Our supreme court replaced the phrase "abuse of discretion" with "erroneous exercise of discretion" almost thirty years ago. *See* **City of Brookfield v. Milwaukee Metro. Sewerage Dist.**, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992).

[6] The trial court stated that it did not believe Juror 19 had either type of bias.

¶25 Fowler does not cite any "relevant and applicable case law" that requires Juror 19 to have been excused based on her equivocation. Contrary to Fowler's argument, "a prospective juror need not unambiguously state his or her ability to set aside bias." *Jimmie R.R.*, 232 Wis. 2d 138, ¶28. "'Indeed, we … fully expect a juror's honest answers at times to be less than unequivocal.'" *State v. Tobatto*, 2016 WI App 28, ¶22, 368 Wis. 2d 300, 878 N.W.2d 701 (citation omitted; ellipses in *Tobatto*). Juror 19's uncertainty about how she might react to graphic evidence does not, on the present facts, establish subjective bias.

¶26 Nor is there anything to indicate that Juror 19 was objectively biased. Despite her anticipated squeamishness, nothing about Juror 19's answers in voir dire suggest "that she had prejudged the case or had her own preset 'concept of justice.'" *See id.* (citation omitted). "Nor did her answer indicate that she was 'unreasonable and unwilling to set aside preconceived opinions or prior knowledge.'" *Id.* (citing *State v. Williams*, 2015 WI 75, ¶80, 364 Wis. 2d 126, 867 N.W.2d 736). As the trial court noted, "this is a circumstance where a squeamish reaction is not an inherently inappropriate … or an inherently biasing reaction to some of the testimony or some of the images that would be connected to this case," and it is "certainly possible" for one to be squeamish and still be fair. We agree, and we discern no erroneous exercise of discretion in the trial court's refusal to excuse Juror 19 for cause.

### b. Juror 5

¶27 When defense counsel started his portion of voir dire, he reminded the jurors that the charges were serious and that one of the victims was four years old, then asked the jurors "whether or not that makes any difference to anyone in the responses that they gave" earlier during the State's questions. Juror 5

11

responded, "Yeah, it would kind of make a difference. I have two granddaughters that are very young, and I also have experienced a suicide in the family, not happy with gunplay as well as it's happened in my neighborhood recently[.]" When defense counsel asked whether or not the child's age "would prevent [him] from being a fair juror," Juror 5 responded simply, "It bothers me." Defense counsel did not ask further questions at that time. Fowler later removed Juror 5 with his first peremptory challenge.

¶28 In his postconviction motion, Fowler asserted that Juror 5 "had indicated that [he] could not be unbiased and could not be indifferent to this case." Thus, Fowler claimed that defense counsel was ineffective for failing to seek to have Juror 5 removed for cause. The circuit court denied the motion, concluding that when the entirety of Juror 5's voir dire answers were considered, there was no evidence of juror bias.

¶29 "[A] defendant waives an objection to a juror's bias if no motion is made to the trial court to remove the juror for cause." *State v. Brunette*, 220 Wis. 2d 431, 442, 583 N.W.2d 174 (Ct. App. 1998). "A failure to object or to further question a juror may be raised as a claim of ineffective assistance of counsel." *State v. Carter*, 2002 WI App 55, ¶14, 250 Wis. 2d 851, 641 N.W.2d 517. The basics of the required showings for ineffective assistance—deficient performance and prejudice—are well-known and need not be repeated here. In the context of an ineffective-assistance claim, the prejudice prong of a juror bias issue presents as a question of whether counsel's performance resulted in the seating of a biased juror. *See State v. Koller*, 2001 WI App 253, ¶14, 248 Wis. 2d 259, 635 N.W.2d 838. "[C]ounsel's failure to act to remove a biased juror who ultimately sat on the jury constitutes deficient performance resulting in prejudice" to the defendant. *Carter*, 250 Wis. 2d 851, ¶15.

12

¶30    In his postconviction motion, as on appeal, Fowler argues that Juror 5 "indicated that he could not be legally indifferent" because he indicated that the victim's age "<u>would</u> make a difference."  Again, Fowler does not specify the type of bias he believes Juror 5 to have held but, as he focuses on Juror 5's words and actions, he is evidently making a subjective bias argument.  The circuit court denied the motion because it rejected Fowler's characterization of Juror 5's answers.  The circuit court explained that Juror 5 had actually said the child's age "would '*kind of* make a difference.'"  Later in voir dire, Juror 5 also stated that he was "a little angry" because of his own experience as a crime victim but, importantly, Juror 5 recognized that his experience "had nothing to do with the defendant and that he would not hold it against him."  The circuit court noted that Juror 5 had at most expressed that the child's age bothered him, and it would be rare to find a potential juror "who would *not* be bothered by the gruesome, violent murder of a four-year-old child."  Thus, the circuit court concluded, the trial court would not have struck Juror 5 for cause, so trial counsel was not ineffective for failing to make the challenge.  *See State v. Wheat*, 2002 WI App 153, ¶30, 256 Wis. 2d 270, 647 N.W.2d 441 ("Trial defense counsel was not ineffective for failing to bring a meritless motion.").

¶31    We agree with the circuit court that the totality of Juror 5's answers do not reflect subjective bias.  Further, as with Juror 19, nothing about Juror 5's answers in voir dire suggests that he had prejudged the case or was unwilling to set aside any preconceived opinions.  *See Tobatto*, 368 Wis. 2d 300, ¶22.  That is, there is no indication that Juror 5 was objectively biased, either.  Therefore, the circuit court did not err in denying relief on this claim.

### c. Peremptory Challenges

¶32    Fowler's challenges to Jurors 19 and 5 are simply a precursor to his main appellate argument that his "use of multiple peremptory strikes to strike jurors who should have been arguably struck for cause may be grounds for reversal." *See Lindell*, 245 Wis. 2d 689, ¶115.

¶33    In *Lindell*, our supreme court held that use of a single peremptory strike to correct a trial court error does not warrant reversal. *See id.*, ¶113. While *Lindell* acknowledged that it was not addressing other situations in the decision, it also implied that trial court errors that forced a defendant to use all of his or her available peremptory strikes would likely merit relief. *See id.* Thus, there must be a spectrum of situations relating to striking jurors for cause—where using one strike to correct trial court error is not grounds for reversal, but using all of one's strikes probably is. However, Fowler does not attempt to analyze his place on that spectrum or why that particular placement warrants relief.

¶34    In any event, neither the trial court nor the circuit court erred with respect to the two jurors Fowler challenges on appeal—neither should have been struck for cause and, thus, there is no basis for reversal.[7]    Rather, Fowler simply used his strikes "in line with a principal reason for peremptories:  to help secure

---

[7] We are confident in our conclusion that neither juror should have been struck for cause, but even if one or both should have been struck for cause, Fowler is still not entitled to relief.  If only one of the two jurors should have been removed, then this is the same situation as in *Lindell*, and reversal is not appropriate. *See State v. Lindell*, 2001 WI 108, ¶113, 245 Wis. 2d 689, 629 N.W.2d 223 ("The substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error.").  If both jurors should have been removed, Fowler has not persuaded us that relief is warranted.  Each side had seven peremptory strikes to use in this matter, and Fowler makes no argument to demonstrate that his remaining five challenges were insufficient for seating an unbiased jury.

the constitutional guarantee of trial by an impartial jury." *See United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).

### III. Request for New Counsel

¶35    Fowler's final issue is his contention that the trial court erroneously exercised its discretion when it denied his request for a new attorney. He asserts that the trial court did not consider the proper factors or standard and that the "breakdown in the attorney client relationship was evident and substantial" such that a new attorney should have been appointed.

¶36    "Indigent defendants are guaranteed the right to appointed counsel … [but] this guarantee does not include the right to the particular attorney of the defendant's choosing." *State v. Darby*, 2009 WI App 50, ¶28, 317 Wis. 2d 478, 766 N.W.2d 770. When a defendant requests new counsel, "the trial judge should inquire whether there are proper reasons for substitution." *See State v. Kazee*, 146 Wis. 2d 366, 371, 432 N.W.2d 93 (1988); *United States v. Seale*, 461 F.2d 345, 359 (7th Cir. 1972). "Whether trial counsel should be relieved and a new attorney appointed is a matter within the [trial] court's discretion." *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. The exercise of discretion must be made "on an informed basis." *See Kazee*, 146 Wis. 2d at 372. On review, we will consider several factors including the adequacy of the trial court's inquiry into the defendant's complaint, the timeliness of the motion, and whether any alleged conflict between the defendant and counsel "'was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.'" *See Jones*, 326 Wis. 2d 380, ¶33 (quoting *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988)).

¶37    Fowler initially requested a new attorney because counsel had "shown his ineptitude to be effective in providing me with a proper defense." No other allegations were made in the motion. At the next hearing, the trial court asked Fowler why he wanted a new lawyer. Fowler explained that he had been in jail for nearly a year and he had not "moved along in [his] cases as far as [he] would like to." He did not believe he had the information he would need to "go through my case and actually be able to fight it properly," and he did not believe "that things have been going as well as they should." The trial court acknowledged Fowler's "frustrat[ion] that things have not moved more quickly" and his feeling that he did not have enough information to "make good decisions," but remarked that "[s]ome of that is a function of there being a lot of different cases." The trial court further noted that a trial date was scheduled, and if it granted Fowler's request for new counsel, "that will probably slow down those dates even more[.]"

¶38    Fowler then clarified that he did not think he had "adequate information enough to properly go over the case and be prepared for trial," but if he "actually had the time to sit down with the attorney and if that time had been taken that perhaps we would be in the position to go to trial." He thought that if he had an attorney who would "come down here maybe on the weekend, sit there for an hour, go over the things," then he might "feel comfortable" to proceed. After asking a few questions of counsel, the trial court told Fowler that "it does not sound to me like you and [trial counsel] have developed some huge conflict between you that's interfering with the two of you working together." Rather, the trial court perceived that Fowler would "just like to be able to communicate with [counsel] more and spend more time with him and work through strategies in your case[.]" Fowler confirmed that the trial court's understanding was correct. The

trial court again noted its concern that "if I were to appoint another lawyer for you at this point that things would get delayed further and that would be even more frustrating to you." It encouraged Fowler and trial counsel to work together and told Fowler that if, at the next hearing, he was not "feeling comfortable with where you are on this case, I want you to tell me about it and then I'll be able to make a better decision on this." Fowler agreed.

¶39 At the next hearing date, the trial court and the parties discussed several pretrial matters before returning to Fowler's request for substitute counsel. Fowler told the trial court he would "like to continue on with my plan, especially seeing as how right now there is stuff being presented that I had absolutely no idea about." Fowler asserted that his trial attorney was not "keeping me in the loop and he obviously hasn't been keeping up with things and that doesn't sit too well with me. I don't believe that at trial that I will be represented properly." Fowler also told the trial court, "I feel like I have a good rapport with him. I feel I have [an] understanding of what direction things are going." However, there would have been "a different feel" if counsel had been more communicative from the start of this case. The trial court explained that "[w]hat regularly happens in cases is that defendants see things in discovery that they think are really important and then the lawyers have also seen those issues." It acknowledged that "those feelings are legitimate, but at the same time I'm confident that [defense counsel] is prepared and that he's been doing exactly what you want him to do even though you don't feel like he's doing [it]." However, the trial court concluded, "I don't think that's sufficient to allow [counsel] to withdraw." The trial court thus denied the motion, but it stated that if there was a desire for an adjournment by the defense on the trial date, Fowler could file a written motion. No adjournment was requested.

¶40    On appeal, Fowler asserts that he did not trust counsel and that he had "clearly indicated breakdown in the attorney client relationship." He says that at the second hearing, he "discussed specific instances of" counsel's failure to discuss the case with him; "[h]ence, clearly, the attorney client-breakdown had been long standing." He argues that the trial court's analysis was "insufficient, erroneous, and inadequate" and that his complaints "<u>do</u> legally constitute cause for the granting of a Motion to Withdraw[.]"

¶41    Whether to grant a request for substitution of counsel is a matter for trial court discretion in part because the trial court "'will be informed of the specific reasons for the defendant's dissatisfaction with his counsel, and the court will be able to evaluate those reasons[.]'" *Jones*, 326 Wis. 2d 380, ¶25 (citation omitted). The record reflects that the trial court properly inquired about Fowler's complaints. It listened to what he had to say, and rephrased Fowler's complaint back to him. Each time, Fowler confirmed the trial court correctly understood him. Fowler does not identify in what way the trial court's inquiry was inadequate.

¶42    Here, the trial court found that there was no specific conflict between Fowler and counsel impairing their relationship beyond Fowler's belief that counsel should spend more time with him. What Fowler wanted was more, and more detailed, discussions with counsel. However, Fowler does not explain what more he thought counsel should have told him, nor how a lack of time with counsel prevented an adequate defense, frustrated a fair presentation of the case, or resulted in an unjust verdict. *See Lomax*, 146 Wis. 2d at 359; *see also State v. Wanta*, 224 Wis. 2d 679, 702-03, 592 N.W.2d 645 (Ct. App. 1999).

¶43 It was fair for the trial court to note, in light of the nature of Fowler's complaint against trial counsel, that appointing a new attorney might delay the case further. We additionally note that there is no guarantee that a new attorney would communicate more to Fowler's liking. In short, we are unpersuaded that the trial court erred when it denied his motion for a new attorney.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.