STATE of Wisconsin, Plaintiff-Respondent,†

v.

Sharon A. SELLHAUSEN, Defendant-Appellant.

Court of Appeals

*No. 2010AP445–CR. Submitted on briefs September 30, 2010.
—Decided November 24, 2010.*

2010 WI App 175

(Also reported in 794 N.W.2d 793.)

† Petition for review granted 2-8-11.

778

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Byron C. Lichstein* of the *Criminal Appeals Project* of the University of Wisconsin Law School, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. Sharon Sellhausen appeals her jury conviction based on the presence of the presiding judge's daughter-in-law on the panel of potential jurors. The daughter-in-law was not seated on the jury because Sellhausen's trial counsel used a peremptory challenge to remove her. Sellhausen argues on appeal that she is entitled to a new trial because the presiding judge should have removed his daughter-in-law sua sponte instead of

forcing her trial attorney to either move to strike for cause or exercise a peremptory strike.[1] The State does not dispute that the best practice would have been for the presiding judge to remove his daughter-in-law sua sponte, but argues that there is no prejudice here because the daughter-in-law did not actually sit on the jury. We disagree with the State. The problem here is that it is difficult to measure the precise effect on trial counsel's conduct during voir dire when a presiding judge's family member is part of the panel of potential jurors. There is too much of a risk that the situation creates a chilling effect on robust inquiry, inquiry that is oftentimes critical to the selection of an impartial jury. This was the concern of both the lead opinion and the concurring opinion in *State v. Tody*, 2009 WI 31, 316 Wis. 2d 689, 764 N.W.2d 737, and although the fact situation is different, that concern continues to percolate here. Accordingly, we reverse and remand for a new trial.

¶ 2. Sellhausen was convicted of battery to a law enforcement officer and disorderly conduct in a trial by jury on May 20, 2009. The presiding judge's daughter-in-law was on the panel of potential jurors. During voir dire, the following exchange took place between the judge and his daughter-in law:

> THE COURT: All right. Nikki, you're my daughter-in-law. All right. I've told the attorneys that you and I have had no discussions about the case, correct?

---

[1] Sellhausen also argues that her trial counsel was ineffective for failing to adequately impeach the State's key witness. Because we find in her favor and grant a new trial on the other issue she presents, we will not address that issue in this opinion. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if resolution of one issue disposes of the appeal, we need not address other arguments raised by appellant).

JUROR STENGEL: Correct.

THE COURT: As a matter of fact, I didn't know until last night that you were coming in as a juror in this matter, right?

JUROR STENGEL: Correct.

THE COURT: Very good. You didn't ask and I wouldn't have excused you anyways so. But you're competent, you can be fair and impartial?

JUROR STENGEL: [Yes].

. . . .

THE COURT: And if we see you after the case, you wouldn't be at all hesitant as to how you decide the case, right?

JUROR STENGEL: Correct.

¶ 3. Later, defense counsel asked her some questions:

[DEFENSE COUNSEL]: I guess I have to ask you, Ms. Stengel, since you're related to the judge. If you would have any preference over any law enforcement officials of any kind over a private citizen?

JUROR STENGEL: No.

[DEFENSE COUNSEL]: No preference whatsoever?

JUROR STENGEL: No preference.

THE COURT: You're not talking about judges, are you?

[DEFENSE COUNSEL]: Oh, absolutely, that's included.

THE COURT: All right.

781

[DEFENSE COUNSEL]: I think that's all I need to ask. Thank you.

¶ 4. Ultimately, trial counsel did not move to strike the judge's daughter-in-law for cause. Instead, he exercised a peremptory challenge against her. When asked about that decision at the postconviction motion hearing, trial counsel testified that he thought it was best not to have a member of the judge's family on the jury. However, at the time of trial, he did not know of a specific ground he could have used to move to strike her for cause. He specifically mentioned the judge's questioning of his daughter-in-law and the daughter-in-law's affirmation of her ability to be impartial as the reason he did not believe he could strike her for cause.

¶ 5. At the postconviction motion hearing, the trial court stated on the record that before voir dire, he had met with both attorneys to let them know that his daughter-in-law would be on the panel. He stated that he remembered telling them he would be happy to excuse her if either party requested that he do so. Sellhausen's trial counsel could not recall this conversation well enough to confirm or deny its substance at the hearing. The trial court denied Sellhausen's motion, and Sellhausen appeals.

¶ 6. Both parties cite to a case decided approximately three weeks before Sellhausen's trial, *Tody*, 316 Wis. 2d 689, to support their arguments. (We note, parenthetically, that the presiding judge in this case was not apprised of *Tody* at the time of trial by either the State or the defense and we in no way fault the court for having been unaware of its existence.) In *Tody*, the presiding judge's mother was on the panel of potential jurors. *Id.*, ¶ 1. The defendant's trial counsel moved to have the judge's mother removed for cause,

but the trial court denied the motion, stating that it did not believe it had legal grounds to remove her. *Id.*, ¶¶ 14–17. Trial counsel did not use a peremptory strike to have her removed, and the presiding judge's mother sat on the jury that convicted Tody. *Id.*, ¶ 18.

¶ 7. The issue in this appeal is whether *Tody* requires a new trial for Sellhausen. Although we could locate no case law specifically addressing the standard of review in a case like this, it seems axiomatic that this is a question of law which we must review de novo. Indeed, *Tody* points out that "appellate deference appears almost ludicrous when the appellate court is going to rely upon the circuit court judge's determination that a member of his or her immediate family is objectively impartial." *Id.*, ¶ 30. The fact that this case concerns a judge's failure to act sua sponte to remove a family member does not change that analysis.

¶ 8. Sellhausen argues on appeal that *Tody* should be read as requiring judges to remove their immediate family members from jury panels sua sponte, whether or not there is a motion to strike for cause. She states:

> It is not fair or reasonable to require the parties to argue to the judge that his/her own family member cannot be a fair juror, particularly in a case like this where the judge's comments during voir dire had already made clear that he saw no problem with his daughter-in-law remaining in the jury pool.

Citing to ¶ 14 of the lead opinion, she argues that *Tody* recognizes the difficult position a trial attorney is put in when there is a member of a presiding judge's family on the jury panel. Whether moving to strike for cause or using a peremptory challenge, trial counsel must ex-

783

press a lack of confidence in the presiding judge's family member in order to remove him or her from the panel. *See id.*, ¶ 14.

¶ 9. The State does not dispute that, ideally, the judge in this case would have struck his daughter-in-law from the jury panel sua sponte. Rather, it argues that *Tody* is factually distinguishable from Sellhausen's case because in Sellhausen's case, there was no motion to strike and the presiding judge's daughter-in-law did not end up on the jury. The State also points out that in *State v. Lindell*, 2001 WI 108, ¶ 113, 245 Wis. 2d 689, 629 N.W.2d 223, our supreme court held that a judge's error in failing to grant a motion to strike for cause is not prejudicial when followed by a party's use of a peremptory strike to remove the juror at issue. It argues that *Lindell* should preclude relief for Sellhausen.

¶ 10. As an initial matter, we note that the *Tody* court explicitly declined to address the issue of whether there should be a bright-line rule prohibiting judges from allowing their family members to sit as jurors, stating that "we need not, and do not, address [this] issue[]." *Tody*, 316 Wis. 2d 689, ¶ 5 n.4. Instead, the *Tody* holding focused more narrowly on the presiding judge's failure to strike his immediate family member for cause. *Id.*, ¶¶ 32–34. However, in the case at bar, unlike *Tody*, there was no motion to strike for cause and defense counsel used a peremptory strike to dismiss the juror. Therefore, in contrast to the precise facts before the *Tody* court, we must address the question of whether the trial court had a duty to dismiss his daughter-in-law sua sponte. If there was no such duty, Sellhausen's argument fails.

¶ 11. Because *Tody* did not directly address our issue, we look to the reasoning behind its holding to decide how it should be applied to Sellhausen's case. Only six justices participated in the *Tody* decision. *Id.*, ¶ 52.

784

While they all agreed on the outcome of the case, they split 3–3 on the rationale.[2] *Id.*, ¶ 6. The lead opinion focused on the Sixth Amendment right to a trial by an impartial jury, *id.*, ¶ 5, and the concurrence focused on the trial court's inherent authority to strike jurors who may appear to be biased, *id.*, ¶¶ 62–64 (Ziegler, J., concurring). We are convinced that the concurrence is most relevant to the question of whether the presiding judge had a duty to strike his immediate family member sua sponte.

¶ 12. In her concurrence, Justice Ziegler focused on the trial court judge's role in jury selection. She pointed to *Lindell*, which advises trial courts to "err on the side of striking jurors who appear to be biased." *Tody*, 316 Wis. 2d 689, ¶ 63 (Ziegler, J., concurring) (citing *Lindell*, 245 Wis. 2d 689, ¶ 109). She also emphasized *Lindell*'s observation that erring on the side of striking jurors may ultimately save judicial time and resources. *Tody*, 316 Wis. 2d 689, ¶ 63 (Ziegler, J., concurring) (citing *Lindell*, 245 Wis. 2d 689, ¶ 109). Though she stopped short of saying that a presiding judge must remove his or her immediate family members sua sponte in every case, she did state that the judge in *Tody*'s case "should have either stricken his mother from the jury or recused himself from the case." *Tody*, 316 Wis. 2d 689, ¶ 67 (Ziegler, J., concurring).

---

[2] There was also a brief, separate concurrence by Justice Prosser discussing his reservations with any holding that establishes "inappropriate precedent." *State v. Tody*, 2009 WI 31, ¶ 53, 316 Wis. 2d 689, 764 N.W.2d 737 (Prosser, J., concurring). He stated, "I cannot join an opinion that seeks to transform a questionable example of 'objective bias' into a per se violation of the Sixth Amendment." *Id.*, ¶ 55 (Prosser, J., concurring). While we recognize his concerns, our opinion focuses on both the lead opinion and the concurrence signed by three justices.

¶ 13. The logic behind the *Tody* concurrence is in harmony with the proposition that judges must act sua sponte to remove immediate family members from the panel of potential jurors in each case.[3] In addition, both the lead opinion and the concurrence expressed concern for cases where judges are asked to rule on matters involving their own family members. *Id.*, ¶ 30 ("The appearance of fairness and propriety clearly is lost when the critical determination of whether a prospective juror should be excluded as a juror on the ground of bias is entrusted to a circuit court judge who is a member of the juror's immediate family."); *id.*, ¶ 61 (Ziegler, J., concurring) ("The judge could not rule on a motion which directly involves his mother as a juror. He did, however, rule on a motion that concerned striking her as a juror.")

¶ 14. Based on the concerns raised in both the lead opinion and the concurrence of *Tody*, we hold that presiding judges must sua sponte remove their immediate family members from the panel of potential jurors. We do so in part because any other holding would require judges to rule on a party's motion to strike judges' immediate family members from the jury pool, a possibility that clearly concerned the *Tody* court.

¶ 15. In so holding, we note that the facts of this case exemplify many of the *Tody* court's concerns even though the presiding judge in this case genuinely attempted to alleviate potential problems. First, before the jury came in, he had an off-the-record conversation

---

[3] Importantly, the lead opinion does not outright disagree with the concurrence's outline of judicial authority; it merely emphasizes the importance of using authority to support the conclusion that reversal is warranted. *See Tody*, 316 Wis. 2d 689, ¶ 6.

with both attorneys where he reportedly told them he would remove his daughter-in-law from the panel at their request. Second, during voir dire, he questioned his daughter-in-law himself, presumably to make sure that she affirmed her impartiality on the record.

¶ 16. Unfortunately, the discussion between the trial judge and attorneys was off the record, and trial counsel was unable to confirm what was said. And, if anything, the trial judge's line of questioning during voir dire exacerbated the problem because his daughter-in-law ultimately only affirmed her impartiality in answer to her father-in-law's leading questions. Defense counsel felt uncomfortable enough with her presence on the jury to use a peremptory challenge to remove her, but her affirmations of impartiality led him to believe he had no grounds for a motion to strike for cause. So, in the end, despite everyone's best efforts to the contrary, we are left with a record that raises many of the same "appearance of bias" concerns as *Tody*. *See id.*, ¶¶ 39–41; *id.*, ¶ 67 (Ziegler, J., concurring). And while we do not fault the presiding judge in this case or base our holding on his conduct, the facts of this case demonstrate many of the reasons why it is much cleaner when a judge removes the immediate family member sua sponte.

¶ 17. We still must address case law holding that a judge's failure to strike for cause is not prejudicial if a party later uses a peremptory challenge to strike the juror. *See Lindell*, 245 Wis. 2d 689, ¶ 113. In *Lindell*, our supreme court held that automatic reversal was not appropriate in cases where "a defendant chooses to exercise a single peremptory strike to correct a circuit court error." *Id.*, ¶ 113. Sellhausen acknowledges the *Lindell* holding in her brief-in-chief, but argues that her case is different because it involves a harm in addition

to the mere possibility of a biased juror being empanelled—the harm that results when counsel is forced to "risk antagonizing the judge by striking the judge's family member." That harm is still present whether the family member ends up on the jury or not.

¶ 18. *Lindell* overruled *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), which required automatic reversal any time a defendant used a peremptory challenge to strike a juror who should have been struck for cause. *Lindell*, 245 Wis. 2d 689, ¶ 5. The *Lindell* decision was based in part on the systemic problems that the *Ramos* holding posed. *See Lindell*, 245 Wis. 2d 689, ¶¶ 95–108. Specifically, the *Lindell* court pointed out that challenges for cause based on something other than statutory bias often involve elements of discretion. *See id.*, ¶ 96. In such cases, verdicts may be reversed based on disagreements between the trial court and appellate judges "notwithstanding the absence of any deficiency in the first trial." *Id.*, ¶ 103. Implicitly, then, *Lindell* was based on the premise that the use of a peremptory challenge fully corrected the trial court's error by removing the problematic juror from the jury.

¶ 19. We agree with Sellhausen that *Tody* expresses concerns that are not addressed by the *Lindell* holding. In particular, the lead opinion in *Tody* expressed concern about the chilling effect that the mere presence of a judge's immediate family member might have on trial counsel's behavior during trial. *See Tody*, 316 Wis. 2d 689, ¶ 39.

> Counsel may be reluctant to challenge the circuit court's adverse rulings with ordinary zeal if one of the jurors whom counsel needs to persuade happens to be an immediate family member of the presiding judge.

> The other jurors may tend to give the deference to the
> judge's mother that they are *presumed to give to the
> judge.*

*Id.* (emphasis added; footnote omitted). In a footnote to the same paragraph, the *Tody* court pointed out that "[t]he influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Id.*, ¶ 39 n.23 (quoting *Quercia v. United States*, 289 U.S. 466, 470 (1933)).

¶ 20. If we accept *Tody's* concerns about a possible chilling effect, then when a presiding judge does not remove his or her family member sua sponte, the defendant is essentially robbed of the right to aggressively question a juror related to the presiding judge.[4] Trial counsel may have a legitimate concern that questioning the immediate family member of the judge could look disrespectful or impolite to the jury or that it could elicit a negative reaction from the judge. So, a defendant is left with a juror whose potential bias is unlikely to be explored adequately before deciding to use a peremptory challenge. Defendants like Sellhausen, unlike the defendant in *Lindell*, would be forced to use a peremptory challenge on a juror whose actual bias they have not been able to investigate. The only other option is to risk offending the presiding judge and/or the jury by questioning the immediate

---

[4] Hypothetically, for example, counsel with an inquiring mind might want to know if the immediate family member has ever had discussions about the law with the presiding judge, and since this is a criminal case, whether the family member has formed any opinions regarding criminal cases based on discussions with the presiding judge. There are a myriad of other hypothetical situations we could conjure up. But the point is that counsel would be understandably reticent to pursue them.

family member aggressively during voir dire. This is not like *Lindell*, where the peremptory challenge is used as a last-resort effort to remove a juror that defense counsel has determined through voir dire to be biased.

¶ 21. In other words, the *Lindell* holding is not applicable to this case or others like it because Sellhausen's use of a peremptory challenge did not adequately correct a trial court error. As *Tody* points out, defendants have a Sixth Amendment right to be tried by an impartial jury. *See Tody*, 316 Wis. 2d 689, ¶ 49. The *Tody* lead opinion tells us that this right is interfered with when a presiding judge's immediate family member sits on the jury—in part based on the impact that it could have on a trial attorney's behavior during proceedings. *Id.*, ¶¶ 38–39, 49. That same right is interfered with when a presiding judge's immediate family member is present for voir dire, a crucial part of the proceedings, as a member of the panel of potential jurors who might hear the case.

¶ 22. Although we share the lead opinion's concerns, we need not decide this case on Sixth Amendment grounds. This is a question of how courts will administer justice. *See id.*, ¶ 61 (Ziegler, J., concurring). The concurrence shared the lead opinion's discomfort with the possibility of a presiding judge's immediate family member sitting on the jury. *See id.*, ¶ 6; *id.*, ¶ 59 (Ziegler, J., concurring). We agree that situations like the one in *Tody* and the one here are "problem[s] waiting to happen." *See id.*, ¶ 59 (Ziegler, J., concurring). We understand the concurrence to have concluded, within the inherent power of the supreme court, that this rule is necessary "to promote the efficient and effective operation of the state's court system." *See State v. Jennings*, 2002 WI 44, ¶ 14, 252 Wis. 2d 228, 647 N.W.2d 142 (citation omitted); *see also*

WIS. CONST. art. VII, § 3. As such, effective operation of the court system requires that presiding judges not allow family members to be potential jurors. It is an easy principle to follow, and in comparison to the potential problems that will be avoided, a sound one.

¶ 23. We are mindful that it might appear as though we, as a mainly error correcting court, are stepping out to further a concept initiated by the three member concurring opinion in *Tody*. But we are confident that we are interstitially applying the underlying rationale of that opinion. Our holding comports with the common ground shared by concurrence and the lead opinion—the idea that there are multiple "red flags" when judges rule on matters involving immediate family members. *Tody*, 316 Wis. 2d 689, ¶ 4; *see also id.*, ¶ 59 (Ziegler, J., concurring). The situation will present itself rarely, but when it does, it should always be obvious to the presiding judge that it exists. So, why should there be a need to wait for a motion to strike from trial counsel? The situation here is in stark contrast to the more nebulous juror bias decisions that concerned the *Lindell* court. *See Lindell*, 245 Wis. 2d 689, ¶¶ 96, 103. We are satisfied that a bright-line rule such as this is far more efficient than a case-by-case analysis of whether the presence of a prospective juror on the voir dire panel might have affected the outcome of a trial. While Sellhausen receives a new trial, in the long run, Wisconsin's idea of a just and efficient court system prevails.

*By the Court.*—Judgment and order reversed and cause remanded.