STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Sharon A. SELLHAUSEN, Defendant-Appellant.

Supreme Court

*No. 2010AP445–CR. Oral argument September 7, 2011.
—Decided February 1, 2012.*

2012 WI 5

(Also reported in 809 N.W.2d 14.)

For the plaintiff-respondent-petitioner the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant there was a brief by *Byron C. Lichstein* and the *Frank J. Remington Center,* UW Law School, Madison, and oral argument by *Bryon C. Lichstein.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J.   This is a review of a published opinion of the court of appeals.[1] The court of appeals reversed the judgment of conviction of Sharon A. Sellhausen, the defendant, and the

---

[1] *State v. Sellhausen,* 2010 WI App 175, 330 Wis. 2d 778, 794 N.W.2d 793.

order denying post-conviction relief of the circuit court for Sheboygan County, L. Edward Stengel, Judge.

¶ 2. The dispositive issue before this court is whether the defendant is entitled to a new trial even though she used a peremptory challenge to remove the judge's daughter-in-law from the jury.

¶ 3. The circuit court denied the defendant's motion for a new trial, noting that neither party moved to strike the daughter-in-law for cause and neither the State nor the defendant suggested that the daughter-in-law was not a suitable juror. The circuit court concluded that it did not believe it "would have been within its appropriate discretion just to automatically exclude a juror that had otherwise been legally selected."

¶ 4. The court of appeals reversed the judgment of conviction of the circuit court and the order denying post-conviction relief.

¶ 5. "[I]nterstitially applying the underlying rationale of [*State v. Tody*, 2009 WI 31, 316 Wis. 2d 689, 764 N.W.2d 737],"[2] the court of appeals held that "presiding judges must sua sponte remove their immediate family members from the panel of potential jurors."[3]

¶ 6. Distinguishing *State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223, the court of appeals further held that "the *Lindell* holding is not applicable to this case or others like it because [the defendant's] use of a peremptory challenge did not adequately cor-

---

[2] *Sellhausen*, 330 Wis. 2d 778, ¶ 23. The decision in *State v. Tody*, 2009 WI 31, 316 Wis. 2d 689, 764 N.W.2d 737, was released approximately three weeks before the defendant's trial; neither the circuit court nor the parties were aware of the *Tody* decision during the trial in the present case.

[3] *Sellhausen*, 330 Wis. 2d 778, ¶ 14.

rect a trial court error."[4] The court of appeals concluded that "a bright-line rule [that a circuit court must remove an immediate family member sua sponte] is far more efficient than a case-by-case analysis of whether the presence of a prospective juror on the voir dire panel might have affected the outcome of a trial."[5]

¶ 7. We conclude that the present case is governed by *State v. Lindell.*[6] We conclude that because the defendant exercised a peremptory strike to remove the circuit court judge's daughter-in-law from the jury, and because the defendant does not claim the jury was unfair or partial, a new trial is not required under the circumstances of the present case.[7] The defendant has not shown that the presence of the challenged juror in the pool of potential jurors affected the defendant's

---

[4] *Id.,* ¶ 21.

[5] *Id.,* ¶ 23.

[6] In *State v. Lindell,* 2001 WI 108, 238 Wis. 2d 422, 617 N.W.2d 500, the court overruled *State v. Ramos,* 211 Wis. 2d 12, 564 N.W.2d 328 (1997). The *Lindell* court held that when a peremptory challenge is used to strike a juror, reversal of a conviction and a new trial are not required in light of the Wisconsin law on peremptory challenges and harmless error, *United States v. Martinez-Salazar,* 598 U.S. 304 (2000), the systemic problems resulting from the *Ramos* decision, and the significant steps the court has taken to address the issue of juror bias. *See Lindell,* 245 Wis. 2d 689, ¶ 53.

[7] The court unanimously agrees that *Lindell* governs the present case and a new trial is not warranted.

Justice Ziegler's concurrence is the majority opinion on the issue addressed in *Tody,* namely, whether a circuit court has inherent authority to strike his or her immediate family member from the panel of potential jurors. Thus, Justice Ziegler's concurrence in *Tody* and Justice Ziegler's concurrence in the present case now represent the opinion of the majority of this court.

substantial rights. Accordingly, we reverse the decision of the court of appeals ordering a new trial.

¶ 8.  Because the defendant asserts that the judgment of conviction should be reversed on the additional ground of ineffective assistance of trial counsel, we remand the cause to the court of appeals to decide this issue.[8]

I

¶ 9.  The facts relating to the issue before this court are not in dispute. The jury, which did not include the presiding circuit court judge's daughter-in-law as a member, convicted the defendant of battery to a law enforcement officer and disorderly conduct.

¶ 10.  The circuit court judge's daughter-in-law was, however, in the pool of potential jurors. During voir dire, the circuit court judge and his daughter-in-law had the following exchange:

THE COURT:  All right. Nikki, you're my daughter-in-law. All right. I've told the attorneys that you and I have had no discussions about the case, correct?

JUROR STENGEL:  Correct.

THE COURT:  As a matter of fact, I didn't know until last night that you were coming in as a juror in this matter, right?

JUROR STENGEL:  Correct.

---

[8] The circuit court rejected the defendant's claim of ineffective assistance of trial counsel; the court of appeals did not reach this issue. The parties stipulated, and the court agreed, that if the court of appeals' decision on the juror issue were reversed, this court would remand the claim of ineffective assistance of trial counsel to the court of appeals.

THE COURT: Very good. You didn't ask and I wouldn't have excused you anyways so. But you're competent, you can be fair and impartial?

JUROR STENGEL: Uh-huh.

THE COURT: The fact that I'm the judge wouldn't affect your ability in this matter at all?

JUROR STENGEL: No.

THE COURT: Listen to all the evidence and decide the case, correct?

JUROR STENGEL: Correct.

THE COURT: And if we see you after the case, you wouldn't be at all hesitant as to how you decide the case, right?

JUROR STENGEL: Correct.

THE COURT: Very good. And I have told the lawyers about this, so they understand that as well.

¶ 11. Shortly after this exchange, defense counsel questioned the circuit court judge's daughter-in-law as follows:

[DEFENSE COUNSEL]: I guess I have to ask you, Ms. Stengel, since you're related to the judge. If you would have any preference over any law enforcement officials of any kind over a private citizen?

JUROR STENGEL: No.

[DEFENSE COUNSEL]: No preference whatsoever?

JUROR STENGEL: No preference.

THE COURT: You're not talking about judges, are you?

293

[DEFENSE COUNSEL]: Oh, absolutely, that's included.

THE COURT: All right.

[DEFENSE COUNSEL]: I think that's all I need to ask. Thank you.

¶ 12. Defense counsel did not move to strike the daughter-in-law for cause. Defense counsel did, however, use a peremptory challenge to remove the daughter-in-law from the jury. At the hearing on the defendant's post-conviction motion, defense counsel testified that he did not believe he had specific grounds to strike the judge's daughter-in-law for cause because the circuit court had established that the daughter-in-law could be impartial. Nonetheless, defense counsel used a peremptory challenge because he "thought that there might be some prejudice there and it's just better safe than sorry."

¶ 13. Also at the post-conviction motion hearing, the circuit court judge stated that before voir dire, he had spoken with both parties' attorneys off the record to tell them that his daughter-in-law would be one of the potential jurors. The judge also recalled telling counsel that he would be glad to excuse the juror if either party so requested. Defense counsel could not recall this conversation clearly enough to confirm or deny its substance.

II

██

¶ 14. This case requires us to determine the application of the *Lindell* and *Tody* cases to the present case. The interpretation and application of prior cases to a new set of facts is a question of law, which this court

decides independently of the circuit court or court of appeals but benefiting from their analyses.

## III

¶ 15.  We turn first to the *Lindell* case.

■

¶ 16.  *Lindell* overruled *State v. Ramos,* 211 Wis. 2d 12, 564 N.W.2d 328 (1997), "which would have required an automatic reversal in any situation where the defendant used a peremptory strike to remove a prospective juror who should have been excused for cause . . . ."[9] The *Lindell* court, applying a harmless error analysis based on the harmless error statute, Wis. Stat. § 805.18(2) (2009–10),[10] concluded that because Lindell exercised a peremptory strike against the challenged juror, "the circuit court's error did not affect the substantial rights of the defendant."[11] Thus, under

[9] *Lindell,* 245 Wis. 2d 689, ¶ 5.

[10] Wisconsin Stat. § 805.18(2) (2009–10) provides:

No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[11] *Lindell,* 245 Wis. 2d 689, ¶ 5.

The court has rejected the State's argument, which has been made in prior cases. The State argues that a defendant's failure to exercise a peremptory challenge to a juror who was challenged for cause but not excused results in a waiver of the defendant's right to raise the issue of whether the juror should

*Lindell,* reversal of the conviction is not automatically required when a peremptory strike removes the challenged juror from the jury.

¶ 17.  The *Lindell* court acknowledged, however, that although "[t]he substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error," situations might arise when the exercise of a peremptory challenge does not cure the trial court's error of failing to excuse a juror for cause.[12] Although the *Lindell* court declined "to evaluate other situations,"[13] it referred to *Pool v. Milwaukee Mechanics' Ins. Co.,* 94 Wis. 447, 453, 69 N.W. 65 (1896), in which the court had commented that "if, by the erroneous ruling [of the trial court], the party is obliged to exhaust all his peremptory challenges, the error is harmful."[14] The *Pool* court explained:  "The true rule, we hold, is . . . to the effect that it is not prejudicial error to overrule a challenge for cause, unless it is shown that an objectionable juror was forced upon the party, and sat upon the case after such party had exhausted his peremptory challenges."[15]

---

have been struck for cause. *See, e.g., Lindell,* 245 Wis. 2d 689, ¶ 117; *State v. Faucher,* 227 Wis. 2d 700, 569 N.W.2d 770 (1999); *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992). Under Wisconsin case law, if a juror who should have been removed for cause is erroneously allowed to be a member of the jury, the conviction must be reversed without inquiry into harmless error even if the defendant declined an opportunity to remove the juror with a peremptory challenge. *Gesch,* 167 Wis. 2d at 671.

[12] *Lindell,* 245 Wis. 2d 689, ¶ 113.

[13] *Id.*

[14] *Lindell,* 245 Wis. 2d 689, ¶ 113 (quoting *Pool v. Milwaukee Mechanics' Ins. Co.,* 94 Wis. 447, 453, 69 N.W. 65 (1896)).

[15] *Pool,* 94 Wis. at 453.

¶ 18. The *Lindell* court also referred to two situations posed by the State in which the State asserted that a trial court's error of failing to excuse a juror for cause might justify a new trial: "[W]hen a circuit court judge repeatedly and deliberately misapplies the law to force a defendant to use peremptory challenges or when the court makes errors that force a defendant to use most or all of his or her peremptory strikes."[16]

¶ 19. None of the scenarios referred to in *Lindell* as exceptions to the rule that a peremptory strike "cures" the circuit court's error of failing to excuse a juror for cause occurred in the instant case. The present case seems to fall squarely within the holding of *Lindell,* not any referenced exception. We acknowledge, however, that the *Lindell* court's examples of exceptions to the rule are obviously intended as illustrative, not exhaustive.

¶ 20. In an effort to distinguish the present case from *Lindell,* the defendant relies on what she labels "the path this Court charted in *Tody.*" Thus, we turn to the *Tody* case for guidance.

¶ 21. *Tody,* 316 Wis. 2d 689, presented a very different fact situation than the instant case. In *Tody,* the defense counsel moved to strike the circuit court judge's mother from the pool of potential jurors for cause; the circuit court judge denied the motion.[17] Neither party in *Tody* used a peremptory challenge to remove the mother from the jury, and the circuit court judge's mother sat on the jury that convicted Tody.

¶ 22. Two key differences exist between the present case and *Tody.* First, in the present case, unlike

---

[16] *Lindell,* 245 Wis. 2d 689, ¶ 119.

[17] The *Tody* circuit court, like the circuit court in the present case, believed it had no legal basis for excusing the juror.

in *Tody,* neither the State nor the defendant moved to excuse the daughter-in-law for cause and the circuit court judge did not rule on a motion involving his family member. Second, in the present case, unlike in *Tody,* the defendant exercised a peremptory strike and the challenged juror did not sit on the jury.[18]

¶ 23. The defendant contends that the *Lindell* harmless error test does not apply in the present case. She makes three arguments in support of her claim that her use of a peremptory challenge did not cure the harm caused by the circuit court's failure to strike the challenged juror sua sponte: "The harm from failing to strike the juror *sua sponte* stemmed from a combination of factors: the appearance of judicial impropriety in not dealing with the situation clearly and decisively, the risk that counsel or the judge will behave differently during the trial due to antagonism caused by counsel striking the judge's family member, *and* the unfairness of the defendant having to use a peremptory challenge on a juror who cannot be subjected to aggressive *voir dire.*"[19]

¶ 24. First, the defendant argues that the circuit court created an appearance of impropriety when it failed to swiftly and decisively remove the challenged juror from the jury pool. The defendant cites several

[18] Although the court of appeals suggested otherwise, *see Sellhausen,* 330 Wis. 2d 778, ¶ 22, neither the *Tody* concurrences nor the *Tody* lead opinion rested on this court's inherent powers regarding jury selection. We need not and do not address the State's argument that only this court, not the court of appeals, has the constitutional superintending authority to declare that presiding judges must sua sponte remove their immediate family members from the panel of potential jurors.

[19] Response Brief of Defendant-Appellant Sharon A. Sellhausen at 21–22 (emphasis in original).

cases for the proposition that a harmless error analysis is inappropriate when an error implicates or imperils public confidence in the integrity of the courts, judges, or juries.[20]

¶ 25. According to the defendant, the circuit court judge's reference to his conversation with his daughter-in-law the night before trial, the judge's leading questions to his daughter-in-law at voir dire, and the judge's off-the-record conversation in which he offered to excuse his daughter-in-law each demonstrate that he handled the situation casually and without enough attention to appearances of propriety.

¶ 26. It seems to us, however, that the defendant overstates the appearance of impropriety in the present case.

¶ 27. The circuit court was aware of the risk of an appearance of impropriety and took steps to prevent such an appearance. The circuit court displayed its concern that all jurors, including the challenged juror, be fair and impartial. The circuit court judge mentioned that he had only recently learned his daughter-in-law would be in the jury pool and that they had no discussions about the case.

---

[20] *See, e.g., Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 811 (1987) ("[A]ppointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general. The narrow focus of harmless-error analysis is not sensitive to this underlying concern."); *Ballard v. United States,* 329 U.S. 187, 195 (1946) (when women are systematically excluded from the jury, "[t]he injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.").

¶ 28. Nothing in the record suggests that the circuit court judge was unconcerned with or indifferent to the appearance of propriety or the integrity of the courts. Indeed, the record shows that the circuit court judge was acutely aware of these concerns and that his decision to allow his daughter-in-law to remain in the pool of potential jurors may have been motivated by a misunderstanding of the scope of the circuit court's power to remove a family member juror who asserts she can be fair and impartial.

¶ 29. We agree with the court of appeals that "it is much cleaner when a judge removes the immediate family member sua sponte."[21] We have urged circuit courts on several occasions "to err on the side of striking prospective jurors who appear to be biased" because "[s]uch action will avoid the appearance of bias, and may save judicial time and resources in the long run."[22] The circuit judge in the instant case did not heed this recommendation.

¶ 30. Nevertheless we are not persuaded that in the present case an appearance of impropriety exists warranting reversal of the conviction and a new trial. The daughter-in-law did not sit on the jury, and as the court of appeals stated, "the presiding judge in this case genuinely attempted to alleviate potential problems."[23]

¶ 31. Second, defense counsel argues that the use of a peremptory challenge harmed the defendant be-

---

[21] *Sellhausen,* 330 Wis. 2d 778, ¶ 16.

[22] *State v. Ferron,* 219 Wis. 2d 481, 503, 579 N.W.2d 654 (1998) (citing *Kanzenbach v. S.C. Johnson & Son, Inc.,* 273 Wis. 621, 627, 79 N.W.2d 249 (1957)). *See also Lindell,* 245 Wis. 2d 689, ¶ 49.

[23] *Sellhausen,* 330 Wis. 2d 778, ¶ 15.

cause it forced defense counsel to adopt an adversarial stance to the presiding judge. The particular concern seems to be that this adversarial stance is likely to affect the behavior of the circuit court and defense counsel during the trial.

¶ 32. Defense counsel fears that he may offend the circuit court judge when counsel removes the circuit court judge's immediate family member from the jury, especially after the judge has taken pains to show (and has determined) that the family member could be a fair and impartial juror. Defense counsel argues that a circuit court judge might, consciously or unconsciously, harbor resentment toward defense counsel and counsel's client. Defense counsel also claims that he (or other counsel in a similar position) may be hesitant to aggressively challenge the presiding judge's other rulings in the proceedings for fear of exacerbating the problem and further alienating counsel from the judge.

■

¶ 33. Defense counsel's concerns seem overstated in the present case. We understand that attorneys fear antagonizing judges. This fear is part of the legal lore and legal culture. Lawyers fear that judges, like other persons, may harbor ill will to the messenger when they dislike or are bothered by the message. As judges ourselves, we tend to view any such concerns by lawyers as exaggerated, but we appreciate that lawyers' perceptions may be different. Although judges are expected to perform their duties objectively, impartially, and unemotionally, lawyers and non-lawyers alike must concede that judges are not immune to human emotions.

¶ 34. We are not persuaded, however, that the risk of an adversarial relationship developing between the presiding judge and defense counsel in the circumstances of the present case is great enough to warrant

automatic reversal absent evidence that a party's substantial rights were actually impaired.

¶ 35.   Nothing in the record suggests that defense counsel changed trial strategy because he feared antagonizing the circuit court judge. Nothing in the record suggests that the circuit court judge harbored any resentment toward defense counsel for using a peremptory strike to remove the daughter-in-law from the jury. The potential chilling effect that concerned the court in *Tody* does not appear to be present in the instant case.

██

¶ 36.   The defendant's third argument is the argument that the court of appeals found most compelling. As the court of appeals put it, "when a presiding judge does not remove his or her family member sua sponte, the defendant is essentially robbed of the right to aggressively question a juror related to the presiding judge."[24] In other words, the argument is that *Lindell* is distinguishable because in *Lindell* the challenged juror was not an immediate relative of the circuit court judge and the lawyer conducted full, uninhibited voir dire of the challenged juror. Defense counsel in *Lindell* was able to decide that the potential juror at issue was biased and to conclude that a peremptory strike was warranted.

¶ 37.   In contrast, in the present case, according to the court of appeals, defense counsel was unable to explore fully in voir dire whether the challenged juror (a member of the judge's immediate family) was biased for fear of antagonizing the circuit court judge, and defense counsel was forced to use a peremptory challenge without determining whether it was necessary to

---

[24] *Id.*, ¶ 20.

strike the juror or whether the defendant might have preferred that the person remain in the jury pool.

¶ 38. We are not persuaded that the distinctions between the present case and *Lindell* warrant a deviation from *Lindell's* general rule. That defense counsel in the present case may have been forced to exercise a peremptory challenge without thoroughly exploring the possible bias of one juror is not sufficient to render *Lindell* inapplicable.

█

¶ 39. *Lindell* held that a circuit court's failure to excuse a juror who should have been excused is harmless error if the defendant uses a peremptory challenge to remove that juror and ends up with a fair, impartial jury. In the instant case, the defendant used a peremptory strike and ended up with a fair, impartial jury. The defendant's substantial right we are concerned with is the defendant's right to a fair, impartial jury, not the defendant's right to the exact jury that the defendant prefers.[25]

█

¶ 40. The defendant does not claim that the jury was biased, unfair, or partial. Nor does the defendant

---

[25] *See Lindell,* 245 Wis. 2d 689, ¶ 115 ("A defendant is entitled to a jury which will insure him [or her] a fair and impartial trial, but not to an unlimited choice in an attempt to secure a jury which will acquit him [or her]." (quoting *Pollack v. State,* 215 Wis. 200, 207–08, 253 N.W. 560 (1934), *overruled in part by State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965)). *See also State v. Ramos,* 211 Wis. 2d 12, 33, 564 N.W.2d 328 (1997) (Crooks, J., dissenting) ("[P]eremptory challenges are not intended to enable the state or the defendant to select particular jurors who they think may be more favorable to their side; rather, peremptory challenges are intended to be a means to the end of ensuring the selection of an unbiased jury.").

claim that she falls within any of the situations set forth in *Lindell* that might justify a new trial even when a defendant receives a fair and impartial jury.[26] There is no evidence in the record that defense counsel was stifled in questioning other prospective jurors as a result of his experience with the challenged juror; that defense counsel was forced to exhaust all of the peremptory challenges without conducting adequate voir dire; or that the circuit court acted in bad faith.

¶ 41.  In sum, the defendant exercised her peremptory right to remove the judge's daughter-in-law from the jury. The defendant agrees that she was tried by a fair, impartial jury. The defendant has not demonstrated harm. Thus, we hold that the defendant's substantial rights were not impaired. The *Lindell* case governs the instant case. The defendant is not entitled to a new trial on the ground that the circuit court erred in failing to excuse the juror sua sponte for cause.

¶ 42.  For the reasons stated above, we reverse the decision of the court of appeals and remand the cause to the court of appeals for consideration of the defendant's ineffective assistance of counsel claim.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the court of appeals.

¶ 43. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I write to discuss Justice Ziegler's concurrence in the present case. The concurrence contains many uncontroversial statements, which all the Justices can support.

¶ 44.  We can all agree that a circuit court "has broad inherent authority" to "fairly, efficiently, and

---

[26] *See* ¶¶ 16–17, *supra.*

effectively administer justice."[1] We can all agree that in accordance with this authority, a circuit court has discretion to remove jurors who are biased. We can all agree that it is preferable that immediate family members of a presiding circuit court judge not sit on the jury.[2] We can all agree that a close relative as a juror is a problem waiting to happen. We can all agree that a circuit court judge should not be ruling on matters affecting members of his or her immediate family.

¶ 45. I do not, however, join Justice Ziegler's concurrence in the present case to "adopt in full" her concurrence in *State v. Tody*, 2009 WI 31, 316 Wis. 2d 689, 764 N.W.2d 737. The *Tody* concurrence becomes law today that will govern *Tody*-like situations in the future when neither party strikes the challenged family-member juror and *Lindell*'s harmless error rule does not apply.

¶ 46. Justice Ziegler's *Tody* concurrence was flawed in 2009 and remains so today.

¶ 47. In *Tody*, the presiding judge's mother sat on the jury that convicted the defendant. The *Tody* lead opinion and Justice Ziegler's concurrence agreed that the conviction had to be reversed because the mother sat on the jury.

¶ 48. The *Tody* lead opinion explained the flaw in Justice Ziegler's *Tody* concurrence, which was joined by two other justices, as follows:

> [The concurring Justices] reach the same ultimate conclusion that we do, namely that the circuit court

---

[1] *State v. Henley*, 2010 WI 97, ¶ 73, 328 Wis. 2d 544, 787 N.W.2d 350 (citation omitted).

[2] *State v. Tody*, 2009 WI 31, ¶ 4, 316 Wis. 2d 689, 764 N.W.2d 737 (lead op.); *Tody*, 316 Wis. 2d 689, ¶ 63 (Ziegler, J., concurring).

judge erred in permitting his mother to serve on a jury in a case in which the judge presided and that the defendant is entitled to a new trial as a result of this error. *They do not, however, identify the authority they rely upon in concluding that the circuit court erred or in concluding that the circuit court's error warrants a new trial for the defendant.* Their concurrence explains that it would have been within the circuit court judge's discretion to strike his mother as a prospective juror or to recuse himself from the case. *But their concurrence does not explain why the circuit court judge not only was permitted but also was required, on pain of reversal by this court, to exercise his discretion in this manner.*[3]

¶ 49.   In other words, in joining a decision reversing the conviction, Justice Ziegler's *Tody* concurrence must have concluded that the circuit court erroneously exercised its discretion by failing to use its discretionary inherent authority to remove the judge's mother. The flaw in the *Tody* concurrence is that it does not explain the basis for determining that the circuit court erroneously exercised its discretion. As the court of appeals explained in the present case, the *Tody* concurrence "stopped short of saying that a presiding judge must remove his or her immediate family members sua sponte in every case . . . ."[4] The court of appeals determined, however, that "[t]he logic behind the *Tody* concurrence is in harmony with the proposition that judges must act sua sponte to remove immediate family members from the panel of potential jurors in each case."[5]

---

[3] *Tody*, 316 Wis. 2d 689, ¶ 6 (lead op.) (footnotes omitted, emphasis added).

[4] *State v. Sellhausen*, 2010 WI App 175, ¶ 12, 330 Wis. 2d 778, 794 N.W.2d 793.

[5] *Id.*, ¶ 13.

¶ 50. In contrast, Justice Ziegler explained her concurrence and vote that a new trial was required in *Tody* as follows: "I believe the judge should have either stricken his mother from the jury or recused himself from the case. . . . Within their inherent authority, I would merely call upon our judges to select a fair and impartial jury and avoid such foreseeable appellate issues."[6] Yet the concurrence declares that the mother is not a biased juror.[7]

¶ 51. This court cannot find an erroneous exercise of discretion and reverse a circuit court simply because a Justice (or four justices of the supreme court) would have exercised his or her or their discretionary inherent authority differently were he, she, or they sitting on the bench wearing the robe of a circuit court judge.

¶ 52. A circuit court's discretionary decision will be sustained if the circuit court:

(1) examined the relevant facts,

(2) applied a proper standard of law, and

(3) used a demonstrably rational process to reach a conclusion a reasonable circuit court could reach.[8]

¶ 53. It is unclear from Justice Ziegler's *Tody* concurrence which of the three grounds for not sustaining a circuit court's discretionary decision applied in *Tody*.

¶ 54. As to the first ground, the circuit court judge in *Tody* clearly considered the relevant facts, which were simply that his mother was going to be a juror.

¶ 55. As to the second ground, Justice Ziegler does not explain the proper standard of law the circuit

---

[6] *Tody,* 316 Wis. 2d 689, ¶ 67 (Ziegler, J., concurring).

[7] *Id.,* ¶ 66 (Ziegler, J., concurring).

[8] *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

court should have applied in *Tody* in exercising its discretion or the improper standard of law that the circuit court did apply. A circuit court's inherent power to disqualify a juror is a discretionary power that must be exercised within defined parameters.[9] The thrust of the *Tody* concurrence was that the case was not about juror bias, so that area of the law could not provide the parameters.

¶ 56. Perhaps Justice Ziegler's *Tody* concurrence should be read as reversing the conviction because the circuit court erroneously exercised its discretion by reaching a conclusion that no reasonable circuit court could reach. In other words, Justice Ziegler's *Tody* concurrence might stand for the proposition that no reasonable circuit court could choose not to invoke its inherent authority to remove the judge's mother from the jury.

¶ 57. Even if this is what was intended by Justice Ziegler's *Tody* concurrence, the reasoning would circle back to the problem that the concurrence provides no legal standard for a circuit court to apply in exercising its discretion in disqualifying a presiding judge's family-member juror. The concurrence fails to explain why the circuit court was subject to reversal for erroneously exercising its discretionary authority in *Tody* in not removing the challenged juror.

¶ 58. Justice Ziegler's *Tody* concurrence apparently stands for the proposition that a circuit court will be reversed when it fails to exercise its "broad inherent powers . . . to fairly, efficiently, and effectively adminis-

---

[9] *State v. Crochiere*, 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 377 (addressing a circuit court's inherent authority to modify sentences).

308

ter justice;"[10] when it does not "make every attempt to avoid foreseeable problems,"[11] and when it does not "avoid appellate issues."[12] Justice Ziegler's concurrence in the instant case instructs circuit courts in deciding whether to disqualify a judge's family-member juror to give "serious consideration" to "the potential for both foreseeable and unforeseeable problems."[13]

¶ 59. These concepts are too broad for circuit courts to apply in a meaningful way in determining whether to disqualify a challenged juror. If a circuit court's judgment is to be reversed by an appellate court when the circuit court does not exercise its discretion to remove a juror in a particular case, that reversal must be based on an articulated legal standard governing the circuit court's exercise of discretion. No such articulated legal standard is set forth in Justice Ziegler's concurrences.

¶ 60. Thus, with regard to the third ground, because Justice Ziegler's *Tody* concurrence does not establish a legal standard for a circuit court to apply, an appellate court cannot determine whether the circuit court used a demonstrably rational process to reach a conclusion a reasonable circuit court could reach.

¶ 61. The confusion engendered by Justice Ziegler's *Tody* concurrence is clearly on display in the court of appeals' opinion in the present case. The court of appeals struggled to make sense of Justice Ziegler's concurrence when it interpreted the *Tody* concurrence as ruling that a circuit court should sua sponte disqualify a judge's immediate family members from the

---

[10] *Tody*, 316 Wis. 2d 689, ¶ 62 (Ziegler, J., concurring).

[11] *Id.*, ¶ 64 (Ziegler, J., concurring).

[12] *Id.*, ¶ 65 (Ziegler, J., concurring).

[13] Justice Ziegler's concurrence, ¶ 75.

jury and stated, "We understand the concurrence to have concluded, within the inherent power of the *supreme court,* that this rule is necessary . . . ."[14] The court of appeals cited Article VII, Section 3 of the Wisconsin Constitution, making it clear that it interpreted Justice Ziegler's concurrence to invoke the supreme court's constitutional superintending authority.

¶ 62. The court of appeals' effort is commendable. One way to make sense of Justice Ziegler's *Tody* concurrence is to infer that it invoked this court's constitutional superintending and administrative authority to establish a rule or standard governing a circuit court's disqualifying a presiding judge's family-member juror.[15] The supreme court's constitutional authority, while not "invoked lightly," is "broad and flexible."[16]

¶ 63. This court could rely on its superintending authority to create a bright-line rule governing when a circuit court judge should exercise his or her discretion to remove sua sponte a juror who has a familial relationship with the circuit court judge or to recuse himself or herself from presiding over the case. However, Justice Ziegler makes clear that the *Tody* concurrence did *not* invoke this court's superintending authority.

¶ 64. Justice Ziegler praises the court of appeals in the present case for relying on her *Tody* concurrence but shoots down its attempt to make sense of her prior writing. Justice Ziegler's concurrence, ¶ 75.

---

[14] *Sellhausen,* 330 Wis. 2d 778, ¶ 22 (emphasis added).

[15] *See* Wis. Const. art. VII, § 3 ("The supreme court shall have superintending and administrative authority over all courts.").

[16] *See In re Jerrell C.J.,* 2005 WI 105, ¶ 41, 283 Wis. 2d 145, 699 N.W.2d 110.

¶ 65. As a result of Justice Ziegler's concurrences, appellate courts are left to wonder, as the court of appeals in the present case wondered, what legal authority they can rely on to review a circuit court if a case like *Tody* arises in the future.

¶ 66. The instant case does not call for further discussion of *Tody*-like situations in which the circuit court judge's immediate family member sits on the jury. Nevertheless, Justice Ziegler, joined by three of our colleagues, uses this opportunity to re-open the book and to close it by adopting her *Tody* concurrence, rather than by taking a different path, which would be more coherent and would provide better guidance to circuit and appellate courts.

¶ 67. One option would be to hold that the legal authority to reverse a circuit court for allowing a judge's immediate family member to sit on the jury can be grounded in the concept of bias, either by the juror or the circuit court judge. If that reasoning commanded a majority of the court, the court could take the additional step and define what categories of family members of the circuit court judge must be excluded from the jury. The parties in the present case recommended the second degree of kinship.[17] In contrast, the court of appeals opted to exclude the category "immediate family members," without further definition. Declaring that it was "interstitially applying the underlying rationale of" the *Tody* concurring opinion,[18] the court of appeals held "that presiding judges must sua sponte

[17] The court might also be guided by SCR 60.04(4)(e), which requires a judge to recuse himself or herself if a party, lawyer, interested person, or material witness is within the third degree of kinship of the judge or the judge's spouse.

[18] *Sellhausen*, 330 Wis. 2d 778, ¶ 23.

311

remove their immediate family members from the panel of potential jurors."[19]

¶ 68. Another option would be for this court to explicitly invoke its superintending and administrative authority to require circuit courts to ensure that members of a specified category of family members of the presiding circuit court judge do not sit on juries. Again, if that reasoning commanded a majority of the court, the court could take the additional step and define what categories of family members of the circuit court judge are excluded from the jury.

¶ 69. Because Justice Ziegler's concurrence in the present case rejected the court of appeals' effort to make sense of her *Tody* concurrence and again explained that these cases are not about jury or judge bias, Wisconsin circuit and appellate courts will be, I think, left scratching their heads looking for legal principles to apply to the facts presented.

¶ 70. For the reasons set forth, I write separately.

¶ 71. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶ 72. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority's holding and its application of *State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223, to the circumstances of this case. That is, I agree with the majority that Sellhausen is not entitled to a new trial because she exercised a peremptory strike to remove the circuit court judge's daughter-in-law from the jury and because she has not demonstrated that reversal is otherwise appropriate. *See* majority op., ¶ 7; *Lindell*, 245 Wis. 2d 689, ¶¶ 113, 119 (concluding that "[t]he substantial rights of a party are

---

[19] *Id.*, ¶ 14.

not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error" but acknowledging that reversal might nevertheless be appropriate if, for example, "a circuit court judge repeatedly and deliberately misapplies the law to force a defendant to use peremptory challenges or when the court makes errors that force a defendant to use most or all of his or her peremptory strikes").

¶ 73. Still, I write separately and concur because, unlike the majority, I would discuss this court's decision in *State v. Tody*, 2009 WI 31, 316 Wis. 2d 689, 764 N.W.2d 737. To be clear, I do not adopt the *Tody* lead opinion and its conclusion that a presiding judge's immediate family member, when serving as a juror, is *per se* objectively biased. *See id.*, ¶ 5. Instead, I adopt in full my concurrence in *Tody* that notes a circuit court's inherent authority to strike such a juror. *See id.*, ¶¶ 59–68 (Ziegler, J., concurring). Today, three justices join me. Accordingly, this concurrence is the majority opinion on the issue of *Tody*'s application to this case. Therefore, my concurrence in *Tody* and this concurrence now represent the opinion of the majority of this court.

¶ 74. The court of appeals in this case went to great lengths to interpret and apply *Tody*, even to the point of declaring that "[t]he issue in this appeal is whether *Tody* requires a new trial for Sellhausen." *State v. Sellhausen*, 2010 WI App 175, ¶ 7, 330 Wis. 2d 778, 794 N.W.2d 793. The court of appeals' reliance on *Tody* deserves our attention.

¶ 75. Relying on my concurrence in *Tody*, the court of appeals concluded that efficient and effective operation of the court system requires presiding judges

to *sua sponte* remove their immediate family members from a panel of potential jurors. *See id.,* ¶¶ 11, 22–23. I part ways with the court of appeals' decision to impose a duty upon circuit court judges to always *sua sponte* remove their immediate family members from a panel of potential jurors. Parties may very well receive a fair and impartial jury even if the jury includes a member of the judge's family. Still, in such circumstances, the potential for both foreseeable and unforeseeable problems warrants the judge's serious consideration. Accordingly, consistent with my concurrence in *Tody,* I continue to urge circuit court judges to exercise their inherent authority to ensure the fair, efficient, and effective administration of justice by considering whether the removal of their immediate family members from a panel of potential jurors or whether recusal from the case would avoid such problems. *Tody,* 316 Wis. 2d 689, ¶¶ 60, 67 (Ziegler, J., concurring).

¶ 76. As the court of appeals acknowledged, this case, like *Tody,* does not present a question of juror bias or a criminal defendant's Sixth Amendment right to be tried by an impartial jury. *Sellhausen,* 330 Wis. 2d 778, ¶ 22 (citing *Tody,* 316 Wis. 2d 689, ¶ 61 (Ziegler, J., concurring)). A reasonable person in the juror's position may be quite able to base her decision solely on the evidence presented and the law as instructed, without regard to the fact that the neutral, non-fact-finding judge is her relative. *See Tody,* 316 Wis. 2d 689, ¶ 66 (Ziegler, J., concurring). Rather, this case is about a circuit court judge's inherent authority to fairly, efficiently, and effectively administer justice through the process of jury selection. *See Sellhausen,* 330 Wis. 2d 778, ¶ 22 ("This is a question of how courts will administer justice."). Permitting the presiding judge's immediate family member to remain on a jury has the

314

potential to create problems, including the possibility that the judge may be called upon to rule on an issue in which his or her family member is the subject of inquiry. *See* SCR 60.04(4)(e)4. Of course, such problems may never surface. However, to ensure the fair, efficient, and effective administration of justice, judges should consider whether they can avoid foreseeable problems by removing their immediate family members from a panel of potential jurors or recusing themselves from the case. Indeed, had the judge in this case removed his daughter-in-law from the panel of potential jurors, and had the judge in *Tody* removed his mother from the panel of potential jurors, *see* 316 Wis. 2d 689, ¶¶ 17–18, this very issue probably would not have come before us.

¶ 77.   In summary, I, unlike the majority, agree with the court of appeals that *Tody* is worthy of discussion in this case. For the reasons stated in my concurrence in *Tody* and adopted in full today, I respectfully concur.

¶ 78.   I am authorized to state that Justices DAVID T. PROSSER, PATIENCE DRAKE ROGGEN-SACK, and MICHAEL J. GABLEMAN join this concurrence.